FIFTH DIVISION

No. 1-06-1954

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT INGRAM, | ) | Honorable |
| | ) | John J. Moran, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

A jury found defendant, Robert Ingram, guilty of first degree murder (720 ILCS 5/9-1(a)(1) (West 2000)). The trial court sentenced him to 25 years for the murder and 25 years for personally discharging a firearm, for a total of 50 years in the Illinois State Penitentiary. On appeal, defendant contends that (1) the trial court erred by admitting statements made by the victim to a civilian witness under the dying declaration exception to the hearsay rule, and (2) defendant's trial counsel was ineffective for failing to request a second degree murder instruction based on provocation. We affirm.

The State charged defendant with murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2000)) and gave defendant notice that it would seek to introduce statements the victim, Anthony Hicks, made to Angela Cameron shortly before he died. Defense counsel filed a motion *in limine* to bar any reference to the statements made by Hicks to Cameron. The hearing on the motion revealed

the State expected the evidence to show that Hicks, after being shot, stated to Cameron, "Luscious, baby I'm dead. Luscious, baby I'm dead. I've been shot in the heart." When Cameron asked, "Who shot you?" Hicks responded, "Pattyman shot me."

In the motion *in limine*, defense counsel argued the statement did not qualify under the dying declaration exception to the hearsay rule and that the dying declaration exception was inconsistent with *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004).

The trial court denied the motion *in limine*, stating "[t]his is a classic instance of a dying declaration and, additionally, an excited utterance. It is not a *Crawford* case. *Crawford* specifically excluded traditional long embedded exceptions to the hearsay rule, which a dying declaration and excited utterances are." On appeal, defendant argues that the dying declaration was inadmissible and trial counsel was ineffective.

BACKGROUND

On August, 1, 2004, in the early morning hours, the defendant watched several people including the victim, Anthony Hicks, playing dice in the Altgeld Gardens Housing Development near 130th and Ellis Street in Chicago. After a few minutes, defendant went home. Eventually, Tyrone Campbell, the defendant's nephew and Hicks got into a fight. Campbell picked up a bottle and told Hicks that he did not want to fight anymore. At that point, Hicks said he was going home to get his gun.

Campbell returned home where he lived with his grandmother, who was the defendant's mother; however, he was unable to get in. Sharon Kennedy, the mother of defendant's children,

2

lived at the home of the defendant's mother with Campbell. Kennedy testified that before Campbell returned, she heard Hicks banging on the back door, but refused to let Hicks into the home. After a few minutes she saw Hicks leave carrying a long stick or pole. Kennedy called Campbell's uncle, the defendant, Robert Ingram. Kennedy told defendant that Hicks was trying to get into the house and that she was scared. A few minutes later, Campbell returned home and Kennedy told him that Hicks was looking for him. Campbell paid little attention to her story and went to sleep.

Sharon Davis testified at trial that she lived at 13042 South Ellis. She knew defendant's nickname was Pattyman. Around 3 a.m. on August 1, 2004, she saw Campbell and Hicks scuffling and rolling on the ground. She went back into her house after she was unable to break them up. After about 45 minutes she heard two or three gunshots, went outside and saw Hicks on the ground. Angela Cameron, who was known as Luscious, was holding his hand.

Angela Cameron testified that her nickname is Luscious. Anthony Hicks was like a brother to her. She was awakened in the early morning hours of August 1, 2004, by gunshots. Her husband told her that her brother had been shot. She understood that her husband was referring to Anthony Hicks. She ran to a parking lot about half a block from her house and knelt next to Hicks. She said, "I'm here." Hicks said several times, "Lusch, baby I'm dead," and told her, "Pattyman shot me, he hit me up good." Hicks also told her he had gotten hit in the heart. Angela Cameron asked him again who shot him, and Hicks said, "Pattyman." The ambulance took him away and she later learned that Hicks died.

Angela Cameron testified that she did not see a pipe or pole near Hicks and admitted her focus was on Hicks. She also said that she could tell that Hicks had been drinking. The State rested its case after Cameron's testimony and the court denied the defense motion for a directed verdict.

The defendant testified that in the early morning hours of August 1, 2004, he was watching people shoot dice, including Anthony Hicks. After a few minutes he went home and fell asleep. He was awakened by Tyrone Campbell knocking on the door. Campbell told defendant that "he had got into it with Hicks." Hicks had gotten a gun, so Campbell got defendant, who took a loaded revolver and walked Campbell home.

Defendant further testified that while he and Campbell were walking, Hicks jumped out and approached them with a metal pole about two feet long. Hicks swung the pole at Campbell, who ran away. Hicks went after defendant, who tried to defend himself. Hicks went to grab defendant's gun, but defendant pushed him away. At that point, Hicks reached for his waistband and defendant believed Hicks had a gun so, to defend himself, he shot Hicks. Defendant said he was 25 feet away, fired his gun four times, but did not know if he hit Hicks, as he ran away while Hicks was still standing.

On cross-examination defendant admitted that the first time he spoke to the police he denied shooting Hicks, but claimed to be with Latoya Spears. After the detectives confronted defendant with the fact that Spears told them defendant was not with her, defendant then told the police he was struggling with Hicks when the gun went off.

4

The defense called no other witnesses. The prosecution called Detective Ayers in rebuttal to discuss the various conversations he had with defendant after his arrest. Both the State and defense rested.

After receiving the instructions on the law, the jury deliberated for approximately eight hours before finding defendant guilty of first degree murder (720 ILCS 5/9-1(a)(1) (West 2000)). The trial court sentenced him to 25 years for the murder and 25 years for personally discharging a firearm, for a total of 50 years with a credit for 424 days. Defendant's motion to reconsider sentence was denied.

On appeal, defendant contends that the trial court erred by admitting statements made by the victim to a civilian witness under the dying declaration exception to the hearsay rule. Defendant also argues that his trial counsel was ineffective for failing to request a second degree murder instruction based on provocation. We take each argument in turn.

ADMISSION OF DYING DECLARATION

We review the issue of the admissibility of the statements *de novo* because, in the context of this case, we are required to determine whether the admission of the statements made by Hicks violate the defendant's constitutional rights. *People v. Redeaux*, 355 Ill. App. 3d 302, 304 (2005).

Defendant argues that the statements admitted under the hearsay exception as a dying declaration or excited utterance violate the sixth amendment (U.S. Const., amend.VI) as interpreted by the United States Supreme Court in *Crawford v. Washington* and *Davis v. Washington*, 547 U.S. 813, 165 L. Ed. 2d 224, 126 S. Ct. 2266 (2006). In support of that

argument, defendant contends that "[b]ecause the statements were testimonial in nature, and because there was no opportunity for cross-examination, the admission of such statements violated Mr. Ingram's Sixth Amendment rights."

Defendant, relying on *Crawford* and *Davis*, argues as follows:

"*Crawford* held that the admission of hearsay statements of an unavailable declarant violates the right to confrontation unless the defendant had a prior opportunity to cross-examine the declarant, if the hearsay statements are testimonial. Furthermore, and importantly for purposes of this case, the Supreme Court in *Davis v. Washington* reiterated that excited utterances, a firmly rooted hearsay exception, are still subject to the *Crawford* rule, and are therefore inadmissible when the statements are considered testimonial. Thus, contrary to the trial court's ruling, the primary concern should not have been whether the statement sought to be admitted fell within a firmly rooted hearsay exception but, rather, whether the declarant's statement was 'testimonial' in nature."

The confrontation clause of the sixth amendment provides: "In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amend. VI. Prior to *Crawford*, the Supreme Court held that the out-of-court statements of an unavailable witness may be admitted into evidence so long as they had adequate "indicia of reliability." *Ohio v. Roberts*, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608, 100 S. Ct. 2531, 2539

6

(1980). A statement showed such reliability if it fell within a "firmly rooted hearsay exception" or demonstrated "particularized guarantees of trustworthiness." *Roberts*, 448 U.S. at 66, 65 L. Ed. 2d at 608, 100 S. Ct. at 2539.

In *Crawford*, 541 U.S. at 60, 158 L. Ed. 2d at 198, 124 S. Ct. at 1369, the Court concluded that the *Roberts* rationale had departed from the original common law principles underlying the confrontation clause by allowing the introduction of testimonial statements of witnesses that were never subject to cross-examination. Thus, the Court held that out-of-court testimonial evidence was inadmissible unless the witness was unavailable and the defendant had a prior opportunity to cross-examine that witness. *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374. While the Court refused to provide a comprehensive definition of what constituted "testimonial" evidence, it stated that such evidence would necessarily include "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374.

In *Davis v. Washington*, the United States Supreme Court addressed two separate cases which raised the issue of what constituted "testimonial" evidence under two very different fact patterns. *Davis*, 547 U.S. 813, 165 L. Ed. 2d 224, 126 S. Ct. 2266. In addressing these two cases, the court in *Davis* provided guidelines for determining when a statement is "testimonial." In one case, the police responded to a domestic disturbance at the home of Amy and Hershel Hammon. The officers separately questioned the couple. Amy completed and signed a battery affidavit against her husband. Amy did not appear at Hershel's trial for domestic battery; however, her affidavit and testimony from the officer who questioned her were admitted over

7

Hershel's objection that he had no opportunity to cross-examine her. Hershel was convicted and the Indiana Supreme Court affirmed, concluding that, although Amy's affidavit was testimonial and should not have been admitted, the error was harmless beyond a reasonable doubt. *Davis*, 547 U.S. at 821, 165 L. Ed. 2d at 236, 126 S. Ct. at 2273.

In resolving whether Amy's statements were inadmissible testimonial evidence, the Court noted that Amy's interrogation was part of an investigation into possibly criminal past conduct and there was no emergency in progress. *Davis*, 547 U.S. at 829, 165 L. Ed. 2d at 241-42, 126 S. Ct. at 2278. In concluding that Amy's statements were testimonial in nature, the Court applied the principles previously articulated in *Crawford*, and held that statements are testimonial when the circumstances objectively indicate that there is no ongoing emergency and the primary purpose of interrogation is to establish or prove past events potentially relevant to later criminal prosecutions. *Davis*, 547 U.S. at 822, 165 L. Ed. 2d at 237, 126 S. Ct. at 2273-74. Under those principles the Court reversed and remanded, finding Amy's statements to be inadmissible testimonial evidence. *Davis*, 547 U.S. at 830-34, 165 L. Ed. at 242-44, 126 S. Ct. at 2278-80.

Applying those principles to the statements at issue in the instant case, we find the statements are not testimonial in nature. Unlike *Davis*, in the instant case, there was no "interrogation" as contemplated by the *Davis* standard and the conversation was not being conducted as interrogation to establish or prove past events potentially relevant to later criminal prosecutions. Rather, the conversation between Hicks and Cameron occurred as a natural consequence of the shooting. The record reflects this conversation occurred between friends immediately after Hicks, who was a friend of Cameron, was fatally shot. This is unlike the

8

situation where statements to detectives are found to be testimonial because they were "made in response to police questioning while the police were conducting an investigation into the *** commission of a crime." *People v. Victors*, 353 Ill. App. 3d 801, 812 (2004) (statements implicating defendant made by domestic battery victim to police officer while officer was conducting investigation were testimonial). Based on our examination of the totality of the circumstances surrounding this conversation, including its content and context, we reject defendant's argument that the statements were testimonial in nature.

The additional issue presented by the factual context of the instant case is whether *Crawford* applies to dying declarations. Regarding exceptions to the hearsay rule, the Court in *Crawford* indicated that "there is scant evidence that exceptions were invoked to admit *testimonial* statements against the accused in a *criminal* case." (Emphasis in original.) *Crawford*, 541 U.S. at 56, 158 L. Ed. 2d at 195, 124 S. Ct. at 1367. In a footnote, the court addressed dying declarations as follows:

> "The one deviation we have found involves dying declarations. The existence of that exception as a general rule of criminal hearsay law cannot be disputed. [Citations.] Although many dying declarations may not be testimonial, there is authority for admitting even those that clearly are. [Citations.] We need not decide in this case whether the Sixth Amendment incorporates an exception for testimonial dying declarations. If this exception must

9

be accepted on historical grounds, it is *sui generis*." *Crawford*, 541

U.S. at 56 n.6, 158 L. Ed. 2d at 195 n. 6, 124 S. Ct. at 1367 n. 6.

Defendant relies on various out-of-state cases that have found a violation of the

confrontation clause where statements were admitted in evidence under the dying declaration

exception. However, in Illinois the question of whether admitting dying declarations violates the

confrontation clause under the principles articulated in *Crawford* was addressed in *People v.*

*Gilmore*, 356 Ill. App. 3d 1023 (2005).

The court in *Gilmore* concluded that the victim's statements to detectives qualified as

dying declarations and were not rendered inadmissible by the principles articulated in *Crawford*.

In reaching that conclusion, the court in *Gilmore* followed the supreme court of California in

*People v. Monterroso*, 34 Cal. 4th 743, 763-65, 101 P.3d 956, 971-72, 22 Cal. Rptr. 3d 1, 19-20

(2004). The reasoning in *Monterroso*, which we find particularly instructive, is as follows:

"[I]f, as *Crawford* teaches, the confrontation clause 'is most

naturally read as a reference to the right of confrontation at

common law, admitting only those exceptions established at the

time of the founding' [citations], it follows that the common law

pedigree of the exception for dying declarations poses no conflict

with the Sixth Amendment." *Monterroso*, 34 Cal. 4th at 765, 101

P.3d at 972, 22 Cal. Rptr. 3d at 20, quoting *Crawford*, 541 U.S. at

54, 158 L. Ed. 2d at 194, 124 S. Ct. at 1365.

10

The defense argues that we should reject these cases because "all of these cases pre-date *Davis*, and rely on reasoning specifically rejected in *Davis*." We note that neither of the two cases addressed by the United States Supreme Court in *Davis* involved dying declarations. Moreover, as previously discussed, under the principles articulated in *Davis* for determining whether a statement is testimonial in nature, the statements in the instant case were not testimonial evidence. The court in *Davis* concluded that statements are testimonial when there is no ongoing emergency and the primary purpose of interrogation is to establish or prove past events potentially relevant to later criminal prosecutions. *Davis*, 547 U.S. at 815, 165 L. Ed. at 237, 126 S. Ct. at 2273-74. In the instant case, the statements were not elicited as the result of police interrogation. The conversation was not being conducted for the purpose of interrogation to establish or prove past events potentially relevant to later criminal prosecutions. Rather, there was an ongoing emergency as Anthony Hicks was in the process of dying, and made the statements at issue in general conversation with his friend Angela Cameron.

We conclude there is no constitutional impediment to admitting the statements made by Hicks to Cameron as he was dying. The record reflects the statements by Hicks were beyond any doubt dying declarations and not testimonial in nature.

We are mindful that the requirements for admitting a dying declaration are "(1) the declaration pertains to the cause or circumstances of the homicide; (2) the declarant [has] the fixed belief and moral conviction that death is impending and almost certain to follow almost immediately; and (3) the declarant [has the] mental faculties sufficient to give an accurate statement about the cause or circumstances of the homicide." *Gilmore*, 356 Ill. App. 3d at 1033,

11

citing *People v. Georgakapoulos*, 303 Ill. App. 3d 1001, 1009 (1999), and *People v. Walker*, 262 Ill. App. 3d 796, 801 (1994).

In the instant case, the statement by Hicks directly pertained to the cause of the homicide. Hicks told Cameron he was dying and he told her that Pattyman shot him. The statements by Hicks reflect his moral conviction that death was impending and almost certain to follow immediately. The record reflects no evidence that his mental faculties were impaired. Accordingly, the statements are hearsay exceptions which satisfy the requirements for admission into evidence as dying declarations.

We conclude the evidence was sufficient to allow the trial court to find beyond a reasonable doubt that the statements made by Hicks were admissible as dying declarations. For the reasons previously discussed, the statements made by Hicks are not testimonial. Accordingly, under the principles of *Crawford*, as further articulated in *Davis*, there is no constitutional impediment to admitting the non-testimonial statements under the dying declaration exception to the hearsay rule. We need not further resolve whether the statements were properly admitted as excited utterances because we find the statements properly admitted under the dying declaration exception to the hearsay rule.

### TRIAL COUNSEL DID NOT PROVIDE INEFFECTIVE ASSISTANCE

Defendant contends he made a substantial showing that his right to effective assistance of counsel was violated because although trial counsel requested an instruction on second degree murder based on defendant's unreasonable belief that he was justified in shooting Hicks, counsel failed to request a second degree murder instruction based on provocation. Whether the trial

12

court properly instructed the jury is a question of law subject to *de novo* review. *People v. Herron*, 215 Ill. 2d 167, 174 (2005).

A defendant is guaranteed the right to the effective assistance of counsel under the United States and Illinois Constitutions. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. In order to establish a violation of the constitutional right to effective assistance of counsel, a criminal defendant must show that counsel's performance was deficient in that it was objectively unreasonable and that the deficient performance so prejudiced the defense as to undermine confidence in the outcome of the proceedings or deprive defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-89, 80 L. Ed. 2d 674, 693-94, 104 S. Ct. 2052, 2064-65 (1984). In *People v. Albanese*, 104 Ill. 2d 504 (1984), the Illinois Supreme Court adopted the *Strickland* rule, stating that " 'the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " *Albanese*, 104 Ill. 2d at 525, quoting *Strickland*, 466 U.S. at 686, 80 L. Ed. 2d at 692-93, 104 S. Ct. at 2064; Ill. Const. 1970, art. I, § 8.

A defendant has the burden of demonstrating that counsel was ineffective. *People v. Lundy*, 334 Ill. 3d 819, 829 (2002). Under the first prong of the *Strickland* test, defendant must overcome a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065, quoting *Michel v. Louisiana*, 350 U.S.

91, 101, 100 L. Ed. 83, 93, 76 S. Ct. 158, 164 (1955).  Evaluation of counsel's conduct cannot extend into areas involving the exercise of judgment, discretion or trial tactics even where the reviewing court would have acted differently.  *People v. Mitchell*, 105 Ill. 2d 1, 12 (1984).

To prove the prejudice prong, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland,* 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.  A defendant's failure to make a requisite showing of either deficient performance or sufficient prejudice defeats an ineffective assistance of counsel claim.  *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.  If the claim of ineffective assistance can be disposed of on the basis that the defendant did not suffer sufficient prejudice, a court need not consider whether counsel's performance was deficient.  *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; *People v. Erickson*, 161 Ill. 2d 82, 90 (1994).

In reviewing the conduct of trial counsel, we note defendant is entitled to effective, not perfect, representation (*People v. Odle*, 151 Ill. 2d 168, 173 (1992)), and this is to be determined from the totality of counsel's performance.  *People v. Evans*, 186 Ill. 2d 83, 94 (1999). Defendant argues his trial counsel was ineffective for failing to request a second degree murder instruction based on provocation.  Defendant contends the record supported such an instruction because the record reflects that before Hicks was shot by the defendant, there was a 10-minute fistfight between defendant's nephew, Tyrone and Hicks.  After the fight, Hicks went to Tyrone's house with a pipe or pole demanding to see Tyrone.  Defendant testified that while he was walking Tyrone home, Hicks stepped into their path with a metal pipe and swung at both of them.

Defendant argues that under "these circumstances, defense counsel's failure to ask for an instruction on second degree murder based on provocation was unreasonable, and undermined confidence in the outcome of the trial."

The purpose of jury instructions is to convey to the jury the correct principles of law applicable to the evidence so that the jury may reach a correct conclusion according to the law and the evidence. *People v. Hopp*, 209 Ill. 2d 1, 8 (2004). While the giving of jury instructions is generally within the discretion of the trial court, we review *de novo* the question of whether the jury instructions accurately conveyed to the jury the applicable law. *People v. Parker*, 223 Ill. 2d 494, 501 (2006). In the factual context of the instant case, defense counsel asked and received an instruction on second degree murder based on defendant's unreasonable belief that he was justified in shooting Hicks. In considering the totality of defense counsel's performance, our review of the record reflects that defense counsel cross-examined the witnesses, made appropriate objections, argued various motions, presented witnesses on defendant's behalf, made opening statement, gave closing argument and asked for specific jury instructions consistent with his theory of defense.

Trial counsel obtained a second degree murder instruction based on the theory that defendant mistakenly believed that the circumstances would justify the deadly force he used. That instruction was consistent with defendant's testimony during trial. That instruction was consistent with trial counsel's theory of defense.

Defendant contends that the evidence supports the theory that the defendant was acting under a sudden and intense passion resulting from serious provocation by the victim. In the

instant case, defendant told several different versions of what happened the night of the murder. Defendant admitted during his testimony that he had changed his story and defendant's nephew and the mother of his children gave conflicting testimony at trial. Defense counsel requested and received an instruction for second degree murder based on the theory that defendant believed the circumstances existed which justified the deadly force he used, but his belief that such circumstances existed was unreasonable. 720 ILCS 5/9-2(a)(1)-(2) (West 2000).

That instruction is factually supported by defendant's version of what happened which he provided under oath at trial. Defendant testified at trial that while he and Campbell were walking, Hicks approached them with a metal pole about two feel long and swung the pole at Campbell, who ran away. Hicks then went after defendant, who tried to defend himself. Hicks attempted to grab defendant's gun, but defendant pushed him away. At that point, according to the testimony of the defendant, Hicks reached for his waistband and defendant believed Hicks had a gun, so to defend himself, he shot Hicks. Defendant said he was 25 feet away, fired his gun four times, but did not know if he hit Hicks, as he ran away while Hicks was still standing.

On cross-examination, defendant admitted that he initially told the police that he did not shoot Hicks, but was with Latoya Spears. It was not until the police confronted him with the fact that Spears told them defendant was not with her, that defendant then described himself struggling with Hicks when the gun went off.

In the factual context of the instant case, it was reasonable trial strategy for defense counsel to decide that any additional instructions would only serve to emphasize the fact that defendant told several different stories. It was strategically sound for defense counsel not to

submit the second degree instruction for sudden and intense passion resulting from serious provocation by Hicks, as that alternate theory could have served to undermine the credibility of defendant's testimony at trial which supported the theory that defendant mistakenly believed the circumstances justified his use of deadly force to prevent death or great bodily harm to himself.

Rather than considering a jury instruction in isolation, we review whether the instructions given the jury considered as a whole, fully and fairly provide the jurors with the applicable law. *People v. Terry*, 99 Ill. 2d 508, 516 (1984). In the instant case, the jury instructions taken as a whole, including those submitted by defense counsel which were used by the trial court to instruct the jury accurately conveyed to the jurors the applicable law. Taking into consideration the total record, we cannot conclude that trial counsel's performance was deficient. Accordingly, we find the conduct of trial counsel to be objectively reasonable.

Moreover, the record does not reflect actual prejudice. To show actual prejudice, defendant must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different or the trial process was fundamentally unfair. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

The defendant told multiple stories and his various versions of the events were uncorroborated. In the factual context of the instant case, the record does not reflect that the failure to instruct the jury on second degree murder based on provocation changed the result of the proceeding or was fundamentally unfair. Based on the totality of the record, defendant has not satisfied

17

the *Strickland* standard for demonstrating ineffective assistance of counsel. The record does not reflect deficient performance or prejudice as the result of trial counsel's representation. Accordingly, defendant failed to demonstrate a violation of *Strickland*. When considered and read as a whole in the factual context of the instant case, the instructions fully and fairly informed the jury of the applicable law.

CONCLUSION

For the reasons previously discussed, we conclude the evidence was sufficient to allow the trial court to find beyond a reasonable doubt that the statements made by Hicks were admissible as non-testimonial dying declarations. Accordingly, under the principles articulated by the United States Supreme Court in *Crawford* and *Davis* there is no constitutional impediment to admitting the non-testimonial statements under the dying declaration exception to the hearsay rule. Further, based on our review of the record, we conclude that defense counsel's representation reflects that defendant was provided effective assistance of counsel.

Affirmed.

FITZGERALD SMITH, P.J., and TULLY, J., concur

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee

v.

ROBERT INGRAM,

Defendant-Appellant

No. 1-06-1954

Appellate Court of Illinois
First District, FIFTH DIVISION

April 11, 2008

Justice Margaret O'Mara Frossard authored the opinion of the court:

Presiding Justice Fitzgerald Smith and Justice Tully concur.

Appeal from the Circuit Court of Cook County.
The Hon. John J. Moran, Judge Presiding.

**COUNSEL FOR APPELLANT**
Patricia Unsinn of the Office of the State Appellate Defender,
Chicago, IL 60601
OF COUNSEL: Melissa C. Chiang

**COUNSEL FOR APPELLEE**
Richard A. Devine, Cook County State's Attorney, Chicago, IL
60602
OF COUNSEL: James E. Fitzgerald and Marie Q. Czech