COHEN, J.
 

 Appellant, Darryl Rayshawn White, challenges his convictions for first-degree murder with a firearm and robbeiy with a firearm. White raises numerous arguments for reversal. Finding these arguments to be without merit, we affirm.
 

 Alexis Nurell enlisted White to assist her in robbing Rajón Davis, a drug dealer with whom she had a prior relationship. White, in turn, recruited Terrance Cobb. Under the ruse that she wanted to buy drugs, Nurell arranged to meet Davis behind a park. When Davis approached the van, White and Cobb jumped out and began shooting. They chased Davis into Vondasa Brown’s yard where he was robbed. After White, Cobb, and Nurell fled, Davis made his way to Vondasa Brown’s front door where he rang the doorbell and began banging on her door. After calling 911, she went to her front door where Davis, fearing he was going to die, told her the names of his attackers, and to “please let them know if I die before they come.” Davis implicated Nu-rell and White in his shooting.
 

 Three officers arrived at the crime scene and observed Davis lying in Ms. Brown’s doorway. Initially, two of the officers secured the area by walking around the perimeter of the residence. The officers then asked Davis what happened and who injured him. In addition to identifying Cobb, White, and Nurell as the persons who shot him, Davis also stated that he was set up due to his relationship with Nurell. Subsequently, he died.
 

 Prior to trial, White moved to exclude Davis’ statements to Vondasa Brown and the police. White argued that Davis was incompetent at the time he made the statements due to the level of drugs in his body, and the fact that he suffered loss of blood flow to the brain from his injuries. White also argued that Davis’ statements to Von-dasa Brown and the officers were testimonial and had to be excluded under
 
 Crawford v. Washington,
 
 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). That motion was denied.
 

 
 *824
 
 The case proceeded to trial. Although White was present for jury selection, prior to opening statements, the trial court was informed that he was fighting corrections officers and refused to be transported from the jail to the courthouse until he received a response regarding a bar complaint he had filed against the prosecutor. White’s counsel objected to the trial continuing in White’s absence and moved for a mistrial. The trial court denied the motion and ruled that Wdiite willingly absented himself. Subsequently, the trial proceeded and the jury heard opening statements and the testimony of Vondasa Brown before recessing for lunch. During this recess, White arrived at the courthouse and decided to participate in the remainder of the trial.
 

 During opening statements, White’s counsel once again moved for a mistrial when the State informed the jury that Nurell was required to take a polygraph examination as part of her plea bargain, and that she changed her story to implicate White and Cobb when faced with having to take the examination. This motion was denied and the State elicited similar testimony during her direct examination. The jury subsequently found White guilty of first-degree murder with a firearm and robbery with a firearm. This timely appeal followed.
 

 As his first point on appeal, White argues that the trial court committed reversible error in allowing the jury to hear that Nurell took a polygraph examination as part of her plea bargain because it raised an inference that her testimony was verified by the results. According to White, “[n]o other inference is possible” where the jury was told that Nurell’s plea agreement required her to testify truthfully at trial and take a polygraph examination. However, the mere mention of a polygraph examination is not prejudicial when no inference is raised as to the result or any inference that could be raised is not prejudicial.
 
 Hutchins v. State,
 
 334 So.2d 112, 113-14 (Fla. 3d DCA 1976). Neither Nurell’s testimony, nor the prosecutor’s statements, indicated the results or raised an inference as to the results of the polygraph examination. Instead, they indicated that Nurell finally told the truth and implicated White and Cobb in the robbery and murder of Davis when confronted with the prospect of taking the polygraph examination.
 

 Second, White contends the trial court could not have found that he voluntarily absented himself from trial without first advising him of the consequences. A very similar argument was rejected in
 
 Taylor v. United States,
 
 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973). Furthermore, where, as here, White does not contend that he did not voluntarily absent himself, he has no right to complain that the trial continued in his absence.
 
 See Daniels v. State,
 
 587 So.2d 460, 461 (Fla.1991). “[T]he governmental prerogative to proceed with a trial may not be defeated by conduct of the accused that prevents the trial from going forward.”
 
 Illinois v. Allen,
 
 397 U.S. 337, 349, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring).
 

 White also cannot complain that the trial court erred in failing to conduct a Nelson
 
 [1]
 
 hearing because he did not “unequivocally” request to discharge his counsel until after trial commenced.
 
 See Dunston v. State,
 
 890 So.2d 483, 484-85 (Fla. 5th DCA 2004). Consequently, the trial court was not required to conduct one.
 
 Id.
 

 Finally, White argues that Davis’ dying declarations to Vondasa Brown and
 
 *825
 
 the officers were inadmissible, pursuant to
 
 Crawford,
 
 541 U.S. 36, 124 S.Ct. 1354, because they were testimonial and solely made under circumstances a reasonable person would believe would be used in a future prosecution. He also contends that Davis’ statement that the shooting was payback for his romantic relationship with Nurell should have been excluded because only that portion of a dying declaration relating to the
 
 res gestae
 
 is admissible,
 
 citing Malone v. State,
 
 72 Fla. 28, 72 So. 415, 416 (1916). This latter argument has not been preserved for review because White did not object to it during trial.
 
 See Sanchez v. State,
 
 909 So.2d 981, 984 (Fla. 5th DCA 2005).
 

 White’s
 
 Crawford
 
 argument fails for three reasons. First, Davis’ dying declarations to Vondasa Brown were not testimonial, notwithstanding the fact that she wrote down White’s and Nurell’s names. This is because Davis volunteered the statements to her as a bystander. They were not a product of a police interrogation. Consequently, their admission was not a
 
 Crawford
 
 violation.
 
 See Williams v. State,
 
 947 So.2d 517, 521 (Fla. 3d DCA 2006);
 
 People v. Ingram,
 
 382 Ill.App.3d 997, 321 Ill.Dec. 1, 888 N.E.2d 520, 524-25 (2008);
 
 People v. Ahib Paul,
 
 25 A.D.3d 165, 169-70, 803 N.Y.S.2d 66 (N.Y.App.2005).
 

 Second, assuming arguendo that Davis’ dying declarations to the officers were testimonial, admitting their testimony was harmless.
 
 See Blanton v. State,
 
 978 So.2d 149, 156 (Fla.2008)
 
 (Crawford
 
 violation subject to harmless error review). The officers’ testimony concerning the dying declarations would have been cumulative to the testimony of Vondasa Brown. As aforementioned, because Davis’ statements to Vondasa Brown were not testimonial, they would not have been excluded under
 
 Crawford.
 
 Furthermore, Nurell directly implicated White in Davis’ robbery and murder. The jury could have relied on either of these witnesses’ testimony in finding White guilty and thus, there was no “reasonable possibility” that the admission of Davis’ dying declarations affected the verdict.
 
 Blanton v. State,
 
 978 So.2d at 156,
 
 quoting State v. DiGuilio,
 
 491 So.2d 1129, 1139 (Fla.1986).
 

 Third, even assuming that Davis’ dying declarations to Vondasa Brown and the officers were testimonial, we determined in
 
 Cobb v. State,
 
 16 So.3d 207 (Fla. 5th DCA 2009), that dying declarations are an exception to the Sixth Amendment’s right of confrontation.
 

 AFFIRMED.
 

 SAWAYA and MONACO, JJ., concur.
 

 [1]
 

 .
 
 Nelson v. State,
 
 274 So.2d 256 (Fla. 4th DCA 1973).