MAY, J.
 

 One little word- — polygraph—does not merit a reversal of the defendant’s conviction for first degree premeditated murder and life sentence. Among other issues, the defendant argues the trial court erred in denying a defense motion to cross-examine a state witness concerning the results of a polygraph examination and the court’s denial of a subsequent motion for mistrial. We find no error and affirm.
 

 The State indicted the defendant for first degree premeditated or felony murder for the stabbing death of the victim. The defendant worked as a caretaker for the victim, who was in her 70’s. The victim often required her caretakers to
 
 *720
 
 come back to collect their money days after it was due.
 

 The victim was seen alive on July 3, 2002. Although the date of death is uncertain, phone records and an autopsy report indicate that the victim died on July 4, 2002. On that date, the victim’s neighbor saw the defendant outside, then walk into the victim’s apartment, and later leave hurriedly alone in her burgundy Ford F-150 truck.
 

 A friend of the defendant’s testified that the defendant had been scheduled to travel to Jamaica on July 11, 2002, and had asked her to care for the victim while she was gone. On July 4, 2002 the defendant called her friend from the victim’s phone and told her that the victim was not paying her monies that were due. The defendant also changed her plane reservation from July 11th to July 5th, and again changed the reservation to leave on the evening of July 4th. She told her friend that she needed to leave early because her child was sick.
 

 The police discovered the victim’s body on July 17, 2002. The victim had been stabbed forty-three times. The only signs of criminal activity were in the bedroom and a small amount of blood transfer in the hallway. The defendant left three fingerprints at the scene. None of the prints contained blood.
 

 The police asked the defendant’s friend to tape record her conversations with the defendant. The tape recordings were entered into evidence, without objection, and played for the jury. In one controlled call, the defendant explained that she had sent an acquaintance known as Dutch to collect money, and that Dutch told her the victim had screamed at him and threatened to call the police. Dutch told her that he may have hit the victim with the phone.
 

 Another of the defendant’s friends also made controlled calls. In one unrecorded call, the defendant stated that she had gone to a lady’s house to collect some money. In another controlled call, the defendant stated that she did not know what happened to the lady, but she probably died. On yet another call, the defendant continuously denied knowing anything about the victim.
 

 The homicide investigation took two to three years until the Jamaican authorities arrested the defendant. A member of the Jamaican Fugitive Apprehension Team testified that the defendant was using a passport in the name of “Alicia Lueyen.” The defendant explained that “Alicia” was the name of a relative of her ex-husband and “Lueyen” was her ex-husband’s last name that she kept.
 

 After her arrest, the defendant voluntarily told an authority that she worked as an aide for a woman and she confronted her about money that was owed with her friend “Frost.” She claimed the woman stabbed her with a knife, and showed the resulting scar on her hand. This led to the woman being struck in the face by Frost. They took the knife, leaving the woman on the floor bleeding, and drove away in the vehicle that had been described by the neighbor.
 

 The defense contended that Dutch committed the murder. To support this theory, the defense attempted to introduce evidence that Dutch had failed a polygraph test administered by the Office of the State Attorney. The polygraph report revealed that two of Dutch’s answers to polygraph questions showed deception: (1) was he ever at the victim’s apartment; and (2) was he present when she was killed. The defense orally moved to cross-examine Dutch about the polygraph results. After some discussion, the court denied the defense motion. The court specifically found
 
 *721
 
 that the “potential relevance for impeachment and otherwise is far outweighed by the potential prejudice.”
 

 The State called Dutch as a witness. He testified that he had collected some debts for the defendant, but he did not accompany her to the victim’s house for that purpose. During cross-examination, defense counsel asked Dutch about his trip to the State Attorney’s office.
 

 [Defense Counsel] Did you come down here to the courthouse?
 

 A. Pardon me?
 

 Q. Do you recall coming down here to the courthouse?
 

 A. Yeah, I came to the courthouse.
 

 Q. You came to the State Attorney’s Office?
 

 A. Yeah, I came to do a polygraph.
 

 Q. I don’t have any further questions.
 

 At the conclusion of Dutch’s testimony, defense counsel objected to Dutch’s response concerning the polygraph. He suggested the only way to cure the impression left by the testimony was to allow him to impeach Dutch with the polygraph results. The trial court responded:
 

 Whether he passed or he didn’t, he said he came to take a polygraph, he didn’t say he took the polygraph, and the fact is, I’m going to tell the jury whether he did or didn’t take the polygraph, or whatever occurred, is irrelevant, not to be considered by them. The case law is very clear on this.
 

 When the court inquired about a curative instruction, defense counsel repeated the only way to cure the problem was to allow him to impeach Dutch with the results of the polygraph. The court then asked if defense counsel waived a curative instruction. Defense counsel responded: “Well, you’re going to give the instruction you feel is appropriate.” Defense counsel then suggested that the court instruct the jury that the witness went to take a polygraph and whether he passed or not should not be considered by the jury. The court then gave the following instruction:
 

 Ladies and gentlemen, there was a reference by the witness that he came to the courthouse to take a polygraph examination. Polygraph examinations are clearly not relevant, not admissible, and not before you. Whether he did or did not ultimately take that examination, or anything that occurred, is completely irrelevant and not something you should consider and not something before you. Okay? It just happened to be blurted out by the witness. So, A, it’s not before you whether he did actually take the polygraph; and, B, if he did take the polygraph it’s not before you what the results are.
 

 What I’m telling you now is you are to completely disregard that answer that was blurted out. Do we understand that? Don’t assume anything. Don’t speculate, oh, he took it, he passed, or he took it, he failed. Don’t assume that he took it, don’t assume whatever any results are. Do we understand that? Can you promise me that? That’s kind of crucial.
 

 Trial for that day ended after the curative instruction.
 

 The next morning, defense counsel moved for a mistrial arguing Dutch’s testimony had left the jury with the impression that he had passed the polygraph, the testimony was prejudicial, and the curative instruction was insufficient to remove the taint. The court asked whether there was anything else it could do to “inoculate the jury.” Defense counsel answered “no.” After a lengthy discussion, the court denied the motion for mistrial. Defense counsel marked the polygraph report as an exhibit for appellate purposes.
 

 
 *722
 
 The State made the following comment during closing argument.
 

 This is a case that is building. The moment that name Dutch came out, as a good law enforcement officer, as a good investigator, you have to consider all possibilities now, all bets are off. So it’s not that anybody thought he really did it. I mean, everything she is saying, it’s all confusing.
 

 Defense counsel did not object to the statement. After the State’s closing, defense counsel renewed the motion for mistrial and argued that the State’s closing had increased the prejudice of Dutch’s reference to the polygraph examination. The court denied the motion.
 

 The jury returned a guilty verdict on one count of first degree murder. The court sentenced the defendant to life in prison without the possibility of parole.
 

 The only issues we address concern the trial court’s handling of the polygraph. First, the defendant argues that the court erred in initially denying the defendant’s request to impeach Dutch with the results of the polygraph. Second, the unanticipated polygraph testimony became particularly prejudicial because it left the jury with the impression that Dutch passed the test, which directly contradicted the defendant’s theory that Dutch had committed the murder. And third, the error was compounded when the prosecutor argued in closing that Dutch had never really been a suspect.
 

 The State has several responses. First, the issue was not preserved because the objection was untimely.
 
 [1]
 
 Second, even if preserved, the trial court did not abuse its discretion when it denied the request to impeach Dutch with the results of the polygraph examination. Third, the trial court cured any error by its instruction. Fourth, the court did not err in denying the motion for mistrial because the jury was neither informed of whether the polygraph was taken nor of the actual results. And fifth, the error, if any, was harmless.
 

 The admissibility of evidence lies in the sound discretion of the trial court; we will not reverse a ruling unless there has been a clear abuse of that discretion.
 
 Ray v. State, 755
 
 So.2d 604, 610 (Fla.2000). This general rule is tempered by Florida’s “more conservative approach to the admission of [polygraph] evidence.”
 
 McFadden v. State,
 
 540 So.2d 844, 846 (Fla. 3d DCA 1989). Absent an agreement between the state and defense, the results of a polygraph examination are inadmissible because they have not been shown to be sufficiently reliable to warrant their use in judicial proceedings.
 
 See United States v. Scheffer,
 
 523 U.S. 303, 309, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998);
 
 Davis v. State,
 
 520 So.2d 572 (Fla.1988).
 

 Here, there was no stipulation. Thus, initially the trial court properly denied the defense request to cross-examine Dutch about the polygraph examination. When Dutch indicated that he had gone to the Office of the State Attorney to take a polygraph, the issue arose for a second time.
 

 While defense counsel did not immediately object, as soon as the questioning concluded, counsel brought the issue to the court’s attention. The court again advised the defense it would not allow cross-examination of Dutch and provided a thorough curative instruction, advising the jury not to consider the testimony. The court went
 
 *723
 
 out of its way to fashion an instruction to protect any harm the single word may have caused. The court also noted that there had been no indication that Dutch took the polygraph or what the results of the polygraph were.
 

 A motion for mistrial is left to the sound discretion of the trial court. We review such decisions for an abuse of discretion.
 
 Salazar v. State,
 
 991 So.2d 364, 371 (Fla.2008). A mistrial should be granted only when the error vitiates the entire trial.
 
 Id.
 
 at 372. “[N]ot every reference to a polygraph exam is inadmissible, nor does every improper admission of the taking of a polygraph exam require a mistrial.”
 
 Olivera v. State,
 
 813 So.2d 996, 998 (Fla. 4th DCA 2002) (quoting
 
 McFadden,
 
 540 So.2d at 845). We find the mention of the word polygraph in this case significantly distinguishable from the admission of having taken a lie detector test in
 
 Olivera.
 

 In
 
 Olivera,
 
 the state unintentionally elicited that its only key witness had taken a lie detector test. 813 So.2d at 997. The trial court sustained the objection, gave a short curative instruction, and denied the motion for mistrial.
 
 Id.
 
 The jury convicted the defendant on all charges.
 
 Id.
 
 at 998. But we reversed, based on the unique facts of the case.
 
 Id.
 
 at 999.
 

 In
 
 Olivera,
 
 there was no physical evidence and no witnesses placing the defendant at the scene.
 
 Id.
 
 at 997. The entire case was built on one witness alone, who testified that the defendant had made in-culpatory statements to him.
 
 Id.
 
 at 998. That witness had not come forward until two years following the murder, and only after being threatened with deportation by law enforcement and eviction by family members unless he implicated the defendant.
 
 Id.
 
 at 997. He was the son of the dead perpetrator, was on probation, had admitted to using marijuana, and had made prior inconsistent statements denying any knowledge of the crime.
 
 Id.
 
 In short, he had been significantly discredited by defense counsel. “Thus, unless the jury believed that he had passed the lie detector test, it is hard to fathom that his testimony would have led to the defendant’s conviction....”
 
 Id.
 
 at 998.
 

 In
 
 Olivera,
 
 we cautioned “that the mention of the ‘three little words’ [lie-detector test] does not, ipso facto, require” a reversal.
 
 Id.
 
 This is just such a case. Here, Dutch’s mere mention that he went to the state attorney’s office to take a polygraph is not the same as indicating that he had in fact taken the exam or the results of the exam.
 
 Cf. Walsh v. State,
 
 418 So.2d 1000, 1002 (Fla.1982). The comment was not elicited by the State, but came as a result of defense counsel’s cross-examination when it was clear that defense counsel wanted to cross examine Dutch about the polygraph.
 

 Dutch did not suffer the same credibility issues as the witness in
 
 Olivera.
 
 There were multiple witnesses and substantial evidence inculpating the defendant. A friend of the defendant confirmed a conversation in which the defendant complained about not being paid for services. Other cell phone records confirmed numerous calls from the victim’s location. The defendant left the country abruptly. Recorded conversations suggested the defendant’s involvement leading to the death of the victim. Under the facts of this case, we find no error in the trial court’s denial of the motion for mistrial.
 

 This holding is bolstered by the great lengths taken by the trial court to insure that the one little word was not considered by the jury in its deliberations. The court clearly and forcefully advised the jury that polygraph examinations were irrelevant, that it was neither to consider
 
 *724
 
 whether a test was taken nor the possible results. The court instructed the jury to completely disregard Dutch’s answer. At the close of the trial, the trial court instructed the jury that it was only to consider the evidence introduced in the trial, and that if it disregarded his instructions the verdict would be a miscarriage of justice. We further hold that the court’s curative instruction cured any prejudice that may have resulted.
 

 For these reasons, we affirm the defendant’s conviction and sentence. We find no merit in the other issues raised.
 

 Affirmed.
 

 POLEN and GERBER, JJ., concur.
 

 [1]
 

 . While defense counsel waited to object until the end of Dutch’s testimony, he later renewed the objection, and moved for mistrial. Defense counsel explained to the court that he did not immediately object so as to not draw attention to the remark. We find the issue sufficiently preserved.