GRIFFIN, J.
 

 Amiri Tahih Lundy [“Lundy”] appeals his conviction of first-degree murder. On appeal, Lundy contends that it was reversible error for the trial court to deny his motion for mistrial following the statement by a State witness that she took a polygraph.
 
 [1]
 

 Lundy, along with Dominique Jamal Tolbert [“Tolbert”] and Maya Derkovic “[Derkovic],” were indicted for the gang-related first-degree murder of fifteen-year-old Harriet “Jackie” Curtis. Three weeks after the homicide, while in custody on another matter, Derkovic confessed to the murder. The State gave Derkovic a plea agreement in exchange for her truthful testimony at the trial of Lundy and Tol-bert. Lundy and Tolbert were tried together.
 

 During the trial, after testifying to the circumstances of the homicide, Derko-vic was extensively cross-examined. While being cross-examined about a prior inconsistent statement concerning the choking of the victim, the following exchange between Tolbert’s counsel and Derkovic took place.
 

 Q Did you not tell the police on October 10th that Mr. Tolbert supposedly held down Jackie’s right hand?
 

 A No. I said left because he was on my left side.
 

 Q That statement is in front of you; is that correct?
 

 A Yes, sir.
 

 Q Thick packet. Did you bring your police statement with you? I guess that means yes; is that correct?
 

 
 *1173
 
 A Yes, sir.
 

 Q How many times have you read your statement before today’s trial testimony, Ms. Derkovic?
 

 A Today I went through it. It’s a lot of paperwork. I went through it. I scanned through everything.
 

 Q Okay. Can you please turn to page— page 18, please, lines — -just read lines 18 through 20 to yourself. Just read lines 18 through 20 to yourself.
 

 AI see it.
 

 Q Does that refresh your memory as to what you told the police back then?
 

 A Yeah, it refreshes my memory. And I know why I said that. And I know why I said left because he was on my left side. If she was on her back, that would be her right arm.
 

 Q Back then you told the police that Mr. Tolbert supposedly held down Jackie, the victim’s right hand or arm; is that correct?
 

 A Yes, sir. Like I said, the reason why I said right is because-because if she’s on her back, her left would be-her right would be my left. And the reason I say left is because it’s my left, my left side.
 

 Q Well, today you said left hand, back on October 7 you said right hand. Which is it?
 

 A Okay. Her right side would be my left side. If we’re facing each other, your right is on my left, so for me to just be able to get it off the top of my head, especially talking with somebody about this, that is very serious and not even something to even stress over, it’s hard to get it off all right in details.
 

 Q Did Mr. Lewis give you some discovery pages, um, recently that detail a visit you had on September 3 by an Officer McClellan?
 

 AI don’t think so, no.
 

 Q Well, on September 3 and October 8th, were you visited at the Orange County Jail by Officer McClellan?
 

 A I might have. I don’t know. I don’t know exactly who the officer is. I might have.
 

 Q If I show you-if I show you some paperwork on this case here, would it refresh your memory as to what you told this officer?
 

 A That’s when I took the polygraph test?
 

 Q Well, did you, in fact, discuss this case with McClellan?
 

 A I don’t know the person’s name. I don’t know who it is. If that’s the day that I took the polygraph test, then, yes, I discussed it with somebody, but I don’t know the name.
 

 (Emphasis added).
 

 After Derkovic made those two polygraph references, Tolbert’s counsel approached the bench and moved for a mistrial. Lundy’s counsel joined in the motion. The State opposed the mistrial, arguing that Tolbert’s counsel was at fault and that the results of the polygraph were not mentioned. Tolbert’s counsel responded:
 

 The fact that she’s testifying today with her plea offer, as Mr. Lewis [ASA] says, to testify truthfully, that implies that she passed the polygraph, because after all, she wouldn’t be truthful and she wouldn’t be testifying today if she didn’t pass the polygraph.
 

 The trial court observed that the mention of the polygraph was inadvertent, that Derkovic said nothing about the results of the polygraph, and denied the motion. The trial judge offered defendants a curative instruction. Both declined. No other mention of the polygraph was made in the trial.
 

 On appeal, Lundy again contends the reference to the polygraph was so prejudicial that failure to grant a mistrial was reversible error because the statements
 
 *1174
 
 raised a necessary inference that Derko-vic’s testimony had been verified by the polygraph.
 

 The State responds that the polygraph comments were invited by Tolbert’s counsel and the polygraph results were not mentioned. The State also points out that a curative instruction was offered, but declined. Lastly, the State suggests that any error is harmless because Derkovic testified that she was the one who murdered the victim.
 

 A motion for mistrial is left to the sound discretion of the trial court, and we review such decisions for abuse of discretion.
 
 Salazar v. State,
 
 991 So.2d 364, 371 (Fla.2008). A mistrial should be granted only when the error vitiates the entire trial.
 
 Id.
 
 at 372. “[N]ot every reference to a polygraph exam is inadmissible, nor does every improper admission of the taking of a polygraph exam require a mistrial.”
 
 Olivera v. State,
 
 813 So.2d 996, 998 (Fla. 4th DCA 2002)
 
 (quoting McFadden v. State,
 
 540 So.2d 844, 845 (Fla. 3d DCA 1989)).
 

 Cases finding harmful error when a polygraph is referred to involve testimony revealing the results of the examination or where the only inference to be drawn from the testimony would be that the testimony of a critical witness had been corroborated by the polygraph.
 
 See Dean v. State,
 
 325 So.2d 14, 17 (Fla. 1st DCA 1975).
 

 Recently, in
 
 White v. State,
 
 17 So.3d 822 (Fla. 5th DCA 2009), this Court found no error despite the fact that the jury learned from the State that the state’s witness was required to testify truthfully and take a polygraph examination as part of her plea bargain. Specifically, this Court held:
 

 The mere mention of a polygraph examination is not prejudicial when no inference is raised as to the result or any inference that could be raised is not prejudicial. Neither [the witness’] testimony, nor the prosecutor’s statements, indicated the results or raised an inference as to the results of the polygraph examination.
 

 Id.
 
 at 824 (citations omitted).
 

 Likewise in
 
 Sullivan,
 
 303 So.2d 632, 634 (Fla.1974), the witness explained that his negotiated life sentence in return for testifying against the defendant was contingent on having taken and passed a polygraph test. In finding there was no reversible error, the supreme court found the jury could have inferred that the witness had taken and passed the polygraph or that he would pass it when he took it.
 
 Id.
 
 at 635. The supreme court also noted that the evidence of the defendant’s guilt was “so overwhelming that we cannot say that this one utterance caused a miscarriage of justice which would necessitate a reversal of the conviction.”
 
 Id.
 
 at 636.
 

 Similarly, in
 
 Hutchins v. State,
 
 334 So.2d 112, 114 (Fla. 3d DCA 1976), the court found, in relevant part, that the testimony indicating the witness had taken a polygraph was not prejudicial error when the testimony did not raise an inference that the witness had either taken a polygraph or any result. In
 
 Rosa v. State,
 
 27 So.3d 718, 723-24 (Fla. 4th DCA 2010), the Fourth District found that the testimony from the witness that he went to the state attorney’s office to take a polygraph was not prejudicial based on the evidence and the curative instruction given by the trial court.
 

 Here, the references to the polygraph were elicited by defense counsel in the context of an unrelated issue that did not concern the outcome of the test. The witness did not reference the polygraph to suggest she was a truthful witness and, contrary to defense counsels’ fervent argument, this mention by the witness, in light of her agreement to testify truthfully at trial, does not require an inference that she “passed” the polygraph. Indeed, it
 
 *1175
 
 barely suggests it. We cannot say that the trial court reversibly erred in failing to order a mistrial.
 

 AFFIRMED.
 

 PALMER and ORFINGER, JJ., concur.
 

 [1]
 

 . Lundy also argues that it was error to deny his motion for mistrial made after the prosecutor impermissibly commented upon Lun-dy's right to remain silent and failure to testify at trial. We affirm on this issue without discussion.