THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEROY GRAHAM, Defendant-Appellant.

First District (1st Division)   No. 1—06—2871

Opinion filed June 30, 2009.

Thomas Peters, of Chicago, for appellant.

Anita Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Michelle Katz, Annette Collins, Rimas F. Cernius, and James A. Costello, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

Among the issues in this appeal from a murder conviction is a dispute about the relevant statutory speedy trial time frame and a claim that admission of a dying declaration violates the sixth amendment confrontation clause.

A jury convicted defendant Leroy Graham of first degree murder and sentenced him to 52 years' imprisonment. On appeal, defendant contends: (1) he was denied his right to a speedy trial; (2) admission of the victim's statement violated his sixth amendment right to confrontation; (3) the State failed to prove him guilty beyond a reasonable doubt based on a theory of accountability; and (4) his sentence is excessive. We affirm defendant's conviction and his sentence.

FACTS

State witnesses testified that on May 15, 2005, defendant initiated a territorial argument with the victim, Malik Jones, over the sale of drugs in a liquor store parking lot. A group of people witnessed the argument. When Jones began to walk away, defendant instructed codefendant Andrew Wesley to shoot Jones. Wesley complied. Jones died as a result of his gunshot wounds.

DECISION

I. Speedy Trial

The question before us is whether defendant was subject to the Intrastate Detainer Act (Act) (730 ILCS 5/3—8—10 (West 2004)) when the underlying charges were filed. If so, defendant was not subject to the general 120-day speedy trial requirement for defendants in custody; rather, he was subject to the 160-day rule applicable to defendants who are incarcerated and subject to the Act. This is a question of statutory interpretation, which we review *de novo*. *People v. Wooddell*, 219 Ill. 2d 166, 171, 847 N.E.2d 117 (2006).

Defendant does not address whether he was subject to the Act. Defendant contends his 120-day speedy trial right was violated. The State contends defendant was subject to the Act. The State contends defendant failed to comply with the Act's statutory requirements for demanding a speedy trial while incarcerated. And, even if defendant met the statutory requirements, the State contends he was brought to trial within the requisite 160 days.

■ The Act says:

"Except for persons sentenced to death, subsection (b) *** of Section 103—5 of the Code of Criminal Procedure of 1963 shall also apply to persons committed to any institution or facility or program of the Illinois Department of Corrections who have untried complaints, charges or indictments pending in any county of this State, and such person shall include in the demand under subsection (b), a statement of the place of present commitment, the term, and length of the remaining term, the charges pending against him or her to be tried and the county of the charges, and the demand shall be addressed to the state's attorney of the county where he or she is charged with a copy to the clerk of that court and a copy to the chief administrative officer of the Department of Corrections institution or facility to which he or she is committed. The state's attorney shall then procure the presence of the defendant for trial in his county by habeas corpus. *** In the event that the person is not brought to trial within the allotted time, then the charge for

which he or she has requested a speedy trial shall be dismissed." 730 ILCS 5/3—8—10 (West 2004).

Section 103—5 of the Code of Criminal Procedure of 1963 (Code) defines the speedy trial requirements. Section 103—5(b), the applicable subsection here, says: "[e]very person on bail or recognizance shall be tried by the court having jurisdiction within 160 days from the date defendant demands trial unless delay is occasioned by the defendant." 725 ILCS 5/103—5(b) (West 2004). Taken together, the Act and the speedy trial statute say "persons already incarcerated on unrelated charges enjoy a 160-day speedy-trial right, which begins to run only upon the filing of a demand." *Wooddell*, 219 Ill. 2d at 175.

In this case, defendant was incarcerated on an unrelated charge when a warrant was issued in connection with the murder we are concerned with in this case. The warrant was based on a complaint filed in the Cook County circuit court, criminal division, on September 26, 2005. On September 27, 2005, the warrant was lodged with the Illinois Department of Corrections (IDOC). On November 28, 2005, the warrant was executed and defendant was transported to court from the IDOC. Without citation to the record, defendant says he made an oral trial demand on November 28, 2005. On December 28, 2005, defendant was indicted by a grand jury for the murder.

The case was set for January 13, 2006, and was continued by order of the court to January 20, 2006. On that date, defendant filed a motion for substitution of judge and the case was continued by agreement for reassignment to January 26, 2006. Defendant was arraigned on January 26, 2006. The case was continued by agreement of the parties several times until June 28, 2006. On June 28, 2006, defendant filed a written demand for trial. The State continued the case until July 31, 2006.

On July 31, 2006, defendant's attorney filed a motion for discharge based on a speedy trial violation. The State filed a response. Neither pleading appears in the record. After a hearing on that date, the motion was denied. Defendant's trial began on August 1, 2006.

Defendant relies on section 103—5(a) of the Code: "[e]very person in custody in this State for an alleged offense shall be tried *** within 120 days from the date he was taken into custody." 725 ILCS 5/103—5(a) (West 2004). We conclude section 103—5(a) does not apply to this defendant.

Defendant was subject to the Detainer Act. When the warrant for the Malik Jones murder was executed on November 28, 2005, defendant already was incarcerated. His prison term for a prior offense ended on November 30, 2008. At the time, defendant also had two pending charges, possession of a controlled substance with the

intent to deliver and unlawful use of a weapon by a felon. When defendant was indicted for the murder in this case on December 28, 2005, he was not in custody for that offense. See *People v. Lykes*, 124 Ill. App. 3d 604, 607, 464 N.E.2d 849 (1984). Rather, defendant was "committed" to the IDOC with "untried complaints, charges or indictments pending" in the State. 730 ILCS 5/3—8—10 (West 2004); *Lykes*, 124 Ill. App. 3d at 608 ("the Act applies to a person committed to the IDOC after his arrest on a pending charge as well as those already committed at the time charges are brought"). The applicable speedy trial period was 160 days. *Lykes*, 124 Ill. App. 3d at 606. Defendant was required to make a speedy trial demand according to the Act. *Wooddell*, 219 Ill. 2d at 175.

Defendant did not comply with the Act. His bare bones written demand did not follow the requirements set out in the Act. It did not provide a statement regarding his IDOC commitment. It did not list information regarding the charges pending against him. It was not sent to the State's Attorney's office. *People v. Dotson*, 136 Ill. App. 3d 356, 359-60, 483 N.E.2d 577 (1985) (filing a demand with the clerk of the court is not a substitute for filing it with the State's Attorney's office). Copies were not sent to the appropriate parties. See 730 ILCS 5/3—8—10 (West 2004).

Even if defendant's written demand satisfied the Act, he was brought to trial well within the prescribed 160-day period. His demand was on June 28, 2006, and his trial began on August 1, 2006. There was no speedy trial violation.

We recognize the trial court did not address the Act when it ruled on defendant's motion for discharge, although the State had contended the Act applied. A reviewing court may sustain the trial court's judgment on any ground found in the record. *People v. Sims*, 167 Ill. 2d 483, 500-01, 658 N.E.2d 413 (1995). We do so.

II. Dying Declaration

Defendant contends the admission of Jones's statement as a dying declaration hearsay exception violated his confrontation clause rights. Defendant contends the statement was testimonial and he was denied an opportunity to challenge it on cross-examination. He does not allege admission of the statement violated the rule against hearsay.

We first address whether Jones's statement was a dying declaration. Deference is given to the trial court's judgment of whether to admit a statement as a dying declaration hearsay exception. *People v. Georgakapoulos*, 303 Ill. App. 3d 1001, 1009, 708 N.E.2d 1196 (1999). We will not overturn the trial court's decision unless it is "palpably against the manifest weight of the evidence." *People v. Gilmore*, 356 Ill. App. 3d 1023, 1033-34, 828 N.E.2d 293 (2005).

■ "A dying declaration is a statement of fact that the victim had made about the cause or circumstances of the homicide." *Gilmore*, 356 Ill. App. 3d at 1031. A dying declaration qualifies as a hearsay exception because it is considered trustworthy where the likelihood of fabrication is minimal due to the declarant's belief that death is imminent. *Gilmore*, 356 Ill. App. 3d at 1031. In order to admit a statement as a dying declaration, the proponent must show beyond a reasonable doubt[1] that: (1) the statement relates to the cause or circumstances of the underlying homicide; (2) the declarant believes death is impending and almost certain to imminently follow; and (3) the declarant is mentally capable of giving an accurate statement regarding the cause or circumstances of the homicide. *Gilmore*, 356 Ill. App. 3d at 1033, citing *Georgakapoulos*, 303 Ill. App. 3d at 1009.

Prior to trial, the State filed a motion *in limine* to introduce, as a dying declaration, a statement Jones made while in the hospital following the shooting. The court reserved its ruling until trial. Nurse Beverly Childs testified in a hearing held outside the presence of the jury. The court ruled the statement was admissible.

■ At issue is Jones's response to Detective James Gallagher's question, "Who shot you?" Detective Gallagher asked the question while Jones was in the emergency room. Jones said, "Wee Baby." "Wee Baby" is defendant's nickname. Jones's statement satisfies the first requirement of a dying declaration.

Nurse Childs said Jones complained that he was cold when he arrived at the hospital. He had been shot three times, twice in the back and once in the leg. He suffered extreme blood loss. His blood pressure was dangerously low. He was losing consciousness. Between five and seven different medical personnel worked on him. Jones asked Nurse Childs to tell his mother "[he] really tried and [he] really loved her." He repeated the statement three times.

"Belief in the imminence of death may be shown by the declarant's own statements or from circumstantial evidence, such as the nature of the wounds or statements made in the declarant's presence." *Gilmore*, 356 Ill. App. 3d at 1033. Jones's request that Nurse Childs tell his mother he *really tried* and *really loved* her demonstrates he did not believe he would have the opportunity to see his mother again. Nurse Childs's description of Jones's health while in the emergency room demonstrates he knew that death was imminent. He complained he

---

[1]While we question the reasonable doubt standard for the admissibility of evidence, we will adhere to a line of cases so holding. *People v. Tilley*, 406 Ill. 398, 403-04, 94 N.E.2d 328 (1950); *People v. White*, 251 Ill. 67, 75, 95 N.E.2d 1036 (1911).

was cold; he knew he had been shot; he could see the numerous medical personnel attempting to save his life. The facts demonstrated Jones possessed "the fixed belief and moral conviction that death [was] impending." *Gilmore*, 356 Ill. App. 3d at 1033.

Finally, although Nurse Childs said Jones was losing consciousness, there is nothing to suggest he was mentally incapable of accurately answering Detective Gallagher's question regarding the identity of his shooter. The trial court correctly decided Jones's statement was a dying declaration, admissible as an exception to the rule against hearsay.

■ The question defendant raises is whether admission of the dying declaration violated defendant's rights under the confrontation clause. Our review is *de novo. People v. Ingram*, 382 Ill. App. 3d 997, 1000-01, 888 N.E.2d 520 (2008).

In *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), the United States Supreme Court held the confrontation clause bars out-of-court, testimonial statements by an absent declarant unless the witness is unavailable and the defendant had an opportunity to cross-examine him or her. *Crawford*, 541 U.S. at 53-54, 158 L. Ed. 2d at 194, 124 S. Ct. at 1366. While discussing the historical basis for the confrontation clause and the interplay of hearsay exceptions, the Supreme Court said, in a footnote:

> "The one deviation we have found involves dying declarations. The existence of that exception as a general rule of criminal hearsay law cannot be disputed. [Citations.] Although many dying declarations may not be testimonial, there is authority for admitting even those that clearly are. [Citations.] We need not decide in this case whether the Sixth Amendment incorporates an exception for testimonial dying declarations. If this exception must be accepted on historical grounds, it is *sui generis.*" *Crawford*, 541 U.S. at 56 n.6, 158 L. Ed. 2d at 195 n.6, 124 S. Ct. at 1367 n.6.

Most recently, the United States Supreme Court referred to the *Crawford dicta* in *Giles v. California*, 554 U.S. 353, 171 L. Ed. 2d 488, 128 S. Ct. 2678 (2008). In *Giles*, the Supreme Court said:

> "We have previously acknowledged that two forms of testimonial statements were admitted at common law even though they were unconfronted. [Citation.] The first of these were declarations made by a speaker who was both on the brink of death and aware that he was dying. [Citations.]" *Giles*, 554 U.S. at 358, 171 L. Ed. 2d at 495, 128 S. Ct. at 2682.

The *Giles* Court reviewed relevant common law and said:

> "In cases where the evidence suggested that the defendant had caused a person to be absent, but had not done so to prevent the person from testifying—as in the typical murder case involving ac-

cusatorial statements by the victim—the testimony was excluded unless it was confronted *or fell within the dying declaration exception.*" (Emphasis added.) *Giles*, 554 U.S. at 361-62, 171 L. Ed. 2d at 497, 128 S. Ct. at 2684.

The statement here was given to a law enforcement officer. It was in response to a question about past events relevant to future criminal proceedings, namely, the identity of the shooter. Jones's statement was testimonial.

This case squarely presents the issue referred to in *dicta* by the Supreme Court in *Crawford* and *Giles*: Does admitting a dying declaration offend the sixth amendment? We hold it does not.

In *Gilmore,* the Second District Appellate Court held dying declarations are not barred by the sixth amendment confrontation clause. *Gilmore*, 356 Ill. App. 3d at 1033. The *Gilmore* court relied on the *Crawford dicta* and *People v. Monterroso*, 34 Cal. 4th 743, 22 Cal. Rptr. 3d 1, 101 P.3d 956 (2004), a case decided by the California Supreme Court. The *Monterroso* court reasoned:

"If, as *Crawford* teaches, the confrontation clause 'is most naturally read as reference to the right of confrontation at common law, admitting only those exceptions established at the time of the founding' [citations], it follows that the common law pedigree of the exception for dying declarations poses no conflict with the Sixth Amendment." *Monterroso*, 34 Cal. 4th at 764, 22 Cal. Rptr. 3d at 19, 101 P.3d at 972, quoting *Crawford*, 541 U.S. at 54, 158 L. Ed. 2d at 194, 124 S. Ct. at 1365.

We recently cited *Gilmore* with approval in *Ingram*, 382 Ill. App. 3d at 1003-04. We recognize the statement at issue there was not testimonial. *Ingram*, 382 Ill. App. 3d at 1004. However, we see no need to depart from the *Gilmore* court's ruling that dying declarations do not conflict with the sixth amendment confrontation clause. The Supreme Court's *dicta* in *Crawford* and *Giles* supports our finding.

The admission of Jones's statement as a dying declaration did not violate defendant's confrontation clause rights. As an aside, it is worth noting Jones's dying declaration that defendant shot him was not accurate. Wesley, not defendant, shot Jones.

III. Sufficiency of the Evidence

Defendant contends there was no reliable evidence to support his conviction.

■ When reviewing the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

(Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). We will not retry the defendant or substitute our judgment for that of the trial court. *People v. Evans*, 209 Ill. 2d 194, 209, 808 N.E.2d 939 (2004). It is the trier of fact's duty to assess the credibility of the witnesses, determine the appropriate weight of the testimony, and resolve conflicts or inconsistencies in the evidence. *Evans*, 209 Ill. 2d at 211. We will not reverse a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to the defendant's guilt. *People v. Cox*, 195 Ill. 2d 378, 387, 748 N.E.2d 166 (2001).

A person is legally accountable for the criminal conduct of another if "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS 5/5—2(c) (West 2004). To establish the requisite intent, the State must present evidence which shows beyond a reasonable doubt the defendant shared the principal's criminal intent *or* there was a common criminal design. *People v. Perez*, 189 Ill. 2d 254, 266, 725 N.E.2d 1258 (2000). "Intent may be inferred from the character of [the] defendant's acts as well as the circumstances surrounding the commission of the offense." *Perez*, 189 Ill. 2d at 266.

At trial, Deborah Johnson and Demetrius Clair testified they saw defendant fighting with Jones over the ability to sell drugs in the Three Stooges liquor store parking lot. Defendant previously gave Jones permission to sell marijuana there. However, once defendant learned Jones was making a large profit at the location, he demanded a portion of Jones's profit.

On the day in question, Clair, Jones's employee, was selling drugs in the Three Stooges parking lot when defendant approached. Defendant told Clair that he needed to speak with Jones. Sometime later, Jones arrived at the Three Stooges liquor store. A verbal argument ensued regarding the territory. During the argument, a group of people, including Johnson, Jones's girlfriend, and codefendant Wesley, gathered near the men. Defendant gestured and/or verbally instructed Wesley to retrieve his handgun. While Wesley was gone, Jones started to walk away. When Wesley returned, defendant told him to shoot Jones. Wesley complied. Jones died as a result of his gunshot wounds. Johnson later identified defendant in a police lineup as the individual who instructed Wesley to shoot Jones.

At trial, Gregory Jenkins and Marcus Scott denied they witnessed defendant order Wesley to shoot Jones. The State impeached Jenkins and Scott with the substance of their prior handwritten statements

and grand jury testimony. The prior statements were admitted as substantive evidence.

Defendant contends the evidence against him was insufficient because the witnesses were not credible, there were inconsistencies in their statements and testimony, and there were conflicts across the witnesses. As the trier of fact, it was the jury's duty to assess the witnesses's credibility, determine what weight to assign to their testimony, and to resolve any inconsistencies and conflicts. *Evans*, 209 Ill. 2d at 211. The State's evidence consisted of Johnson's and Clair's trial testimony and Jenkins's and Scott's properly admitted prior inconsistent statements. See 725 ILCS 5/115—10.1 (West 2004). The evidence was not so improbable or unsatisfactory as to create a reasonable doubt that defendant shared the same criminal intent as Wesley when he instructed Wesley to shoot Jones.

IV. Sentence

■ Defendant contends his sentence is excessive in light of his participation in the offense and his potential for rehabilitation.

A trial court has broad discretion to determine an appropriate sentence. *People v. Jones*, 168 Ill. 2d 367, 373, 659 N.E.2d 1306 (1995). The trial court's judgment is given great deference because the trial court is in the best position to "analyze the acts constituting the crime and defendant's credibility, demeanor, general moral character, mentality, social environments, habits, age, and potential for rehabilitation." *People v. Ramos*, 353 Ill. App. 3d 133, 137, 817 N.E.2d 1110 (2004). When a defendant's sentence is within the permissible statutory range, a reviewing court will not disturb the trial court's decision absent an abuse of discretion. *Jones*, 168 Ill. 2d at 373-74.

Defendant was convicted of first degree murder. The permissible sentencing range is 20 to 60 years. 730 ILCS 5/5—8—1(a)(1)(a) (West 2004). Defendant's 52-year prison term is within the permissible range. The record demonstrates the trial court considered aggravating and mitigating factors in fashioning defendant's sentence. See *People v. Tijerina*, 381 Ill. App. 3d 1024, 1041, 886 N.E.2d 1090 (2008). In particular, the court considered the facts surrounding defendant's order to kill Jones. There is no evidence the trial court abused its discretion.

CONCLUSION

We affirm the judgment of the trial court.

Affirmed.

HALL and GARCIA, JJ., concur.