2015 IL App (1st) 132884

FIRST DIVISION
AUGUST 31, 2015

No. 1-13-2884

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 04 CR 24639 |
| DORIAN FAULKNER, | ) ) | Honorable Thomas V. Gainer, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Justices Connors and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a bench trial, the circuit court of Cook County found defendant Dorian Faulkner guilty of one count of being an armed habitual criminal and two counts of unlawful use or possession of a weapon by a felon (UUWF), and sentenced him to six years of imprisonment. On direct appeal, he argues that: (1) his armed habitual criminal conviction should be reversed because it was predicated on a prior conviction for aggravated unlawful use of a weapon that was based on a statute found to be unconstitutional and void by *People v. Aguilar*, 2013 IL 112116; and (2) his UUWF convictions should be reversed because the State failed to prove beyond a reasonable doubt that he had constructive possession of the firearm and ammunition recovered by the police. For the following reasons, we affirm in part and reverse in part the judgment of the circuit court of Cook County, and remand the matter to the circuit court for further proceedings.

¶ 2                                    BACKGROUND

¶ 3     On July 14, 2012, Chicago  police officers conducted a compliance check on the defendant, who was released on parole[1] for an unrelated crime and was living at 5210 South Morgan Street in Chicago, Illinois.  At the residence, the police recovered a .223-caliber assault rifle and ammunition from the attic, after which they arrested the defendant.  On July 26, 2012, the defendant was charged with one count of being an armed habitual criminal (count I) and two counts of UUWF (counts II and III).  The armed habitual criminal charge was predicated upon his two prior convictions for aggravated unlawful use of a weapon (AUUW) under case number 08 CR 0981001 and manufacture/delivery of a controlled substance under case number 09 CR 0948301.

¶ 4     On July 16, 2013, a bench trial commenced during which the State presented two witnesses.  Parole Officer Jack Tweedle (Officer Tweedle) testified that about 8:30 a.m. on July 14, 2012, he and Officer Jim Hollenback (Officer Hollenback), with the assistance of four other officers, conducted a parole compliance check on the defendant at 5210 South Morgan Street in Chicago.  He described the residence as a two-story, single-family home.  Officer Tweedle testified that the purpose of the compliance check was to verify that the defendant was complying with the conditions of his parole contract.  The officers knocked on the door multiple times and the defendant took about five minutes to answer it.  The defendant was alone at the time he answered the door.  After entering the residence, Officer Tweedle found about three grams of cannabis in plain view on a coffee table in the living room.  During the compliance check, the defendant remained in the living room with Officer Hollenback.  Officer Tweedle

_____

[1]The defendant was paroled on the unrelated crime on April 17, 2012.  The evidence shows that as a condition of his release, he was refrained from possessing a firearm or other dangerous weapons, and was subject to the search of his person, property and residence.

described the layout of the residence as having a small hallway leading from the front door to the living room area, a bedroom with a mattress on the floor to the right of the living room, a kitchen, and an entry leading to an enclosed back porch from the rear of the kitchen. Stairs led to the attic via an enclosed back porch. Neither the entry leading to the enclosed back porch nor the attic had a door. Officer Tweedle went upstairs and walked through the entire attic, where he found a loaded .223-caliber assault rifle. The assault rifle was loaded with a round in the chamber and 41 additional rounds in a magazine. A box of .223-caliber bullets was also found. Officer Tweedle testified that nothing obscured his view of the rifle. The police officers then confiscated the assault rifle and the box of ammunition.

¶ 5    Officer Cary Pozulp[2] (Officer Pozulp) testified that he assisted Officer Tweedle with the parole compliance check at about 8:30 a.m. on July 14, 2012. He stated that the officers entered the first floor of the South Morgan Street residence after climbing a flight of exterior stairs. Officer Pozulp believed that there was a basement in the residence, but there were no stairs leading from the first-floor unit into the basement. However, there was a flight of stairs leading from the first-floor unit to the attic, which could be accessed by a "closed dwelling" through the kitchen. There were no locks or doors barring entry from the first floor into the attic. Officer Pozulp met Officer Tweedle in the attic, where he recovered a .223-caliber assault rifle near the entrance of the attic. Officer Pozulp did not have to move anything to see the assault rifle, which was only partially covered by a wooden board. The assault rifle was loaded with one round in the chamber and had over 40 live rounds in the magazine. Officer Tweedle then alerted Officer Pozulp to a nearby box of .223-caliber ammunition, which contained an additional 43 rounds of ammunition. Officer Pozulp testified that aside from the defendant and the police officers, no

---

[2]It is unclear whether Officer Pozulp's first name is spelled correctly in the transcript.

one else was present in the first-floor unit or in the attic at the time of the compliance check. He stated that the officers also recovered about three bags of cannabis from the living room. At about 8:47 a.m., the defendant was mirandized, taken into police custody, and transported to the police station. At the police station, Officer Pozulp and Sergeant Dedore interviewed the defendant. When Officer Pozulp asked the defendant about the assault rifle, he replied that, "the hood's crazy, we're at war with these GDs out here," and that "I'm not worried about that, and my lawyer will handle this." On cross-examination, Officer Pozulp noted that, during police interrogation, the defendant neither stated that the assault rifle belonged to him nor that it was used "for protection." However, when defense counsel asked whether the defendant had informed the police during interrogation to "go ahead and charge me with that gun. My lawyer got this," Officer Pozulp replied "[c]orrect."

¶ 6    At the close of the State's case-in-chief, the State, without objection from the defense, entered into evidence certified copies of the defendant's prior felony convictions for AUUW (case No. 08 CR 0981001) and manufacture/delivery of a controlled substance (case No. 09 CR 0948301). The State then rested and the trial court denied defense counsel's motion for a directed finding.

¶ 7    Patricia Faulkner (Patricia) testified as the sole witness for the defense. She testified that the defendant is her great-nephew and that she had lived at the 5210 South Morgan Street residence since about 1980. Patricia stated that her siblings, Loretta Faulkner (Loretta) and Willie Faulkner (Willie), owned the building. Patricia lived in the basement of the residence, while the defendant lived in the first-floor unit at the time of his arrest. The attic was accessible from the enclosed back porch stairs of the first-floor unit, and the back porch could be accessed from the backyard. She stated that before the defendant moved into the residence in April 2012,

other family members brought furniture and items into the apartment and also "tried to clear some things out to make the space better for him." Some items in the attic were there before the defendant moved into the residence. Much of the furniture inside the first-floor unit belonged to other family members. Patricia testified that there were three copies of the key to the residence, which were held by her and her siblings, Loretta and Willie. Loretta's key, however, was not "cut properly" and she no longer possessed it. At trial, Patricia also identified numerous bills and mailings that were addressed to different family members at the 5210 South Morgan Street location. She testified that she did not see the defendant bring a gun into the home in April 2012, nor did he ever tell her that he had a gun. She also never observed anyone else bring a gun into the home between April 2012 and July 2012. On cross-examination, Patricia stated that, at the time the defendant lived in the home, there was no door separating the attic stairs from the attic. However, the door separating the enclosed back porch from the backyard had a lock on it. Both she and the defendant had physical access to the attic. Before the defendant moved in, other family members had lived there from time to time, but the defendant was the only person living in the first-floor unit at the time of his arrest in the instant case. Patricia stated that she was not aware that there was a .223-caliber assault rifle and ammunition in the attic. In order to access the attic from the basement unit where Patricia lived, she would have had to walk through the laundry room next to her apartment and walk up the back stairs.

¶ 8    Following closing arguments, the trial court found the defendant guilty of all charges—one count of being an armed habitual criminal and two counts of UUWF:

> "Okay. Yes, this is a case of [] constructive possession,
> and, yes, other people had access to this building, according to the
> testimony of [Patricia], before the [d]efendant moved in. There is

evidence from [Patricia] that people were bringing things into that [first-floor] unit *** to make the place habitable for the [d]efendant when he was paroled in April of 2012.

There is also evidence that the [d]efendant's grandfather, who is [Patricia]'s brother, had a key. [Patricia] had a key, and [Patricia's] sister, apparently, had a key at some point, but that key didn't work anymore—it wasn't cut right—and it didn't work.

There are – there's access to the attic from the floor that the [d]efendant was living on; there's access to *** the attic from [Patricia's] apartment. [Patricia] testified that she had no idea that the gun was up there, so it clearly wasn't her gun, even though she had access to *** the attic.

I would note, for the record, that [Patricia] had a tremendous amount of difficulty walking in and out of the courtroom. She was aided by a cart that is on wheels that also has a seat which she sat in when she testified. She did not take the two or three steps up to the witness stand, and I asked her to do that only because I thought it would be more convenient for her.

In any event, even if she could access the attic herself, in her condition, she clearly said it wasn't her gun, though she had no idea it was up there.

The fact that her brother, the [d]efendant's grandfather, had access doesn't mean he was up there. We need to look at what was

up there. This is a very dangerous weapon that was locked and loaded and ready to go.

Now, that alone would not be enough to prove that this [d]efendant, beyond a reasonable doubt, possessed that weapon. But when you combine the fact that this thing was up there, locked and loaded and ready to go, with the statement – and I believe the police officers because if the police officers were making this up, the statement from the police officers would have been, he admitted that that was his weapon, he kept it up there for protection.

But that's not what [Officer] Pozulp said. He said, this – the hood is crazy, we're at war with these GDs. Which is tantamount to saying, I need this thing for my protection.

I believe the police officers, I believe that the State has proven that this [d]efendant possessed that weapon beyond a reasonable doubt. There is a finding of guilty on all charges.

* * *

Let me make one more comment about the mail, by the way. *** I want to just say that, while it's interesting that many members of the family used this address of 5210 [South Morgan] as a place to *** let the mail be delivered to, there's four or five different names ***. I don't believe that, in any way, indicates that

they were coming into this house to get their mail and were going

up into the [d]efendant's apartment and up into that attic.

I believe that family members use this as a convenient

place to get their mail. Perhaps when they were between addresses

or living in places that they didn't want to receive their mail for

security reasons, but I don't think that creates a reasonable doubt in

this [c]ourt's mind."

¶ 9 On August 27, 2013, the trial court denied the defendant's motion for a new trial and sentenced him to six years of imprisonment.[3] On that same day, the defendant filed a timely notice of appeal. Accordingly, we have jurisdiction over this appeal.

¶ 10                                        ANALYSIS

¶ 11 We determine the following issues on appeal: (1) whether the State established beyond a reasonable doubt that the defendant was an armed habitual criminal; and (2) whether the State established beyond a reasonable doubt that the defendant possessed the assault rifle and ammunition that were recovered from the attic by the police.

¶ 12 We first determine whether the State established beyond a reasonable doubt that the defendant was an armed habitual criminal.

¶ 13 When the sufficiency of the evidence is challenged on appeal, we must determine "'whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Graham*, 392 Ill. App. 3d 1001, 1008-09 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A reviewing court affords great deference to the

_____

[3]The trial court found that counts II and III merged with count I.

trier of fact and does not retry the defendant on appeal. *People v. Smith*, 318 Ill. App. 3d 64, 73 (2000). It is within the province of the trier of fact "to assess the credibility of the witnesses, determine the appropriate weight of the testimony, and resolve conflicts or inconsistencies in the evidence." *Graham*, 392 Ill. App. 3d at 1009. The trier of fact is not required to accept any possible explanation compatible with the defendant's innocence and elevate it to the status of reasonable doubt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 229 (2009). A reviewing court will not substitute its judgment for that of the trier of fact. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). A reviewing court must allow all reasonable inferences from the record in favor of the State. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). A criminal conviction will not be reversed "unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to the defendant's guilt." *Graham*, 392 Ill. App. 3d at 1009.

¶ 14    At trial, the State, without objection by the defense, entered into evidence certified copies of the defendant's prior felony convictions for AUUW (case No. 08 CR 0981001) and manufacture/delivery of a controlled substance (case No. 09 CR 0948301). These two prior felony convictions served as the predicate offenses underlying the defendant's armed habitual criminal conviction in the instant case.

¶ 15    The defendant argues on appeal that his armed habitual criminal conviction should be reversed because the State failed to prove beyond a reasonable doubt that he had two qualifying convictions to satisfy the necessary elements of the armed habitual criminal offense. He specifically argues that his 2008 felony conviction for AUUW, a predicate offense to the armed habitual criminal offense, was void because the statute under which he was convicted for the 2008 felony was declared unconstitutional by our supreme court in *People v. Aguilar*, 2013 IL 112116.

¶ 16 The State counters that the defendant's armed habitual criminal conviction should be affirmed where his 2008 felony conviction for AUUW was valid at the time he possessed the assault rifle in the instant case. The State argues that it is the status of the defendant's prior conviction at the time he possessed the assault rifle that controls, arguing that because he was a twice-convicted felon at the time of the incident on July 14, 2012, he was properly charged and convicted of being an armed habitual criminal in the case at bar.

¶ 17 The armed habitual criminal statute provides in pertinent part the following:

> "(a) A person commits the offense of being an armed habitual criminal if he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of any combination of the following offenses:
>
> > (1) a forcible felony as defined in Section 2-8 of this Code;
> >
> > (2) unlawful use of a weapon by a felon; aggravated unlawful use of a weapon; *** or
> >
> > (3) any violation of the Illinois Controlled Substances Act or the Cannabis Control Act that is punishable as a Class 3 felony or higher." 720 ILCS 5/24-1.7 (West 2012).

¶ 18 The parties do not dispute that the defendant's prior 2009 felony conviction for manufacture/delivery of a controlled substance (case No. 09 CR 0948301) satisfied one of two qualifying offenses under the armed habitual criminal statute. Rather, they disagree on whether his 2008 felony conviction for AUUW (case No. 08 CR 0981001) satisfied the second of the two qualifying offenses under the statute.

¶ 19    In *Aguilar*, 2013 IL 112116, our supreme court found the Class 4 version of the AUUW statute (720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2008)) to be unconstitutional in violation of the second amendment right to bear arms.  When a statute is declared unconstitutional, it is void *ab initio*, or as though the law had never been passed.  See *People v. Tellez-Valencia*, 188 Ill. 2d 523, 526 (1999).  The defendant maintains that because his prior conviction for the Class 4 form of AUUW (case No. 08 CR 0981001) is void under *Aguilar*, the State could not rely on this now-void conviction to serve as a predicate offense for being an armed habitual criminal. Therefore, he argues, the State failed to prove an essential element of the offense of armed habitual criminal.  The State counters that since the defendant's 2008 conviction for AUUW was valid at the time he possessed the assault rifle in the instant case, the State sufficiently proved at trial that he was an armed habitual criminal.

¶ 20    We find that this court has already addressed the same exact issue in *People v. Fields*, 2014 IL App (1st) 130209 and *People v. McFadden*, 2014 IL App (1st) 102939, *appeal allowed*, No. 117424 (Ill. May 28, 2014).  In *Fields* and *McFadden*, this court, relying on *People v. Dunmore*, 2013 IL App (1st) 121170, reversed the defendant's convictions at issue in those cases and held that each defendant's prior conviction for AUUW under the statute that had been declared unconstitutional by *Aguilar* could not serve as a predicate offense for the defendant's armed habitual criminal conviction (*Fields*) or unlawful use of a weapon conviction (*McFadden*).  We find no reason to deviate from the holdings in *Fields* and *McFadden*.  Because the defendant's prior conviction for AUUW was based on a statute that was found to be unconstitutional and void *ab initio* in *Aguilar*, we cannot allow it to stand as a predicate offense for the defendant's armed habitual criminal conviction in the instant case.  Thus, we find that the State was required to, but could not, prove beyond a reasonable doubt an element of the offense

of armed habitual criminal, where the statute underlying the AUUW conviction was found to be unconstitutional and thus, the conviction cannot serve as a predicate offense for any charge.

¶ 21 The State maintains that the defendant's armed habitual criminal conviction should be upheld, arguing that *Fields* and *McFadden* were wrongly decided because those cases failed to consider how the defendant's previous AUUW conviction was still valid at the time he possessed the assault rifle in the instant case. The State contends that "it is the status of the prior conviction at the time he or she possesses the firearm that controls, regardless of whether that prior conviction is later vacated, expunged, or declared void *ab initio*." In support, the State cites multiple federal cases and state cases from other jurisdictions, focusing primarily on the holdings in *Lewis v. United States*, 445 U.S. 55 (1980); *United States v. Lee*, 72 F.3d 55 (7th Cir. 1995); *Bailey v. Lampert*, 153 P.3d 95 (Or. 2007); and *United States v. Padilla*, 387 F.3d 1087 (9th Cir. 2004). First, we note that federal court decisions, other than United States Supreme Court decisions, are considered persuasive authority and not binding on this court. See *People v. Rendak*, 2011 IL App (1st) 082093, ¶ 18. Second, *Lewis*, *Lee*, *Bailey*, and *Padilla* do not involve predicate felony convictions that were based on an unconstitutional statute and thus, have no applicability to the facts in the case at bar. Therefore, we reiterate that we have no reason to deviate from the holdings in *Fields* and *McFadden*.

¶ 22 The State also argues in a footnote that this court has no jurisdiction to consider the merits of the defendant's predicate prior AUUW offense. We emphasize that the defendant's prior conviction for AUUW (case No. 08 CR 0981001) is not at issue here, nor do we make any findings as to the applicability of *Aguilar* to that conviction on a collateral attack. We also emphasize that we are not vacating the defendant's prior AUUW conviction (case No. 08 CR 0981001) pursuant to *Aguilar*. We further decline to address whether formal proceedings for

collateral relief may be available to the defendant to vacate his AUUW conviction in that case. Thus, the State's jurisdictional argument is misplaced here. Accordingly, because the State could not prove beyond a reasonable doubt an element of the offense of being an armed habitual criminal, we reverse the defendant's conviction.

¶ 23 We next determine whether the State established beyond a reasonable doubt that the defendant possessed the assault rifle and ammunition that were recovered from the attic by the police.

¶ 24 The defendant argues that the State failed to prove beyond a reasonable doubt that he had constructive possession of the assault rifle and ammunition that were found in the attic of the home, where he had been living in the first-floor unit for a short time; the apartment unit contained other family members' possessions that had been moved and stored in the attic to make room for him; others had lived there before him; other family members received mail there and had keys to the unit; and he did not admit to owning the contraband.

¶ 25 The State counters that the evidence established beyond a reasonable doubt that the defendant possessed the assault rifle and ammunition, which satisfied the element of possession supporting both his convictions for armed habitual criminal[4] and UUWF. The State specifically argues that the defendant was proven to have constructive possession of the assault rifle and ammunition in his attic where the evidence showed that he had knowledge of the weapon's presence and had exclusive control over the area where the weapon was located.

---

[4]Although this court has already concluded that the defendant's armed habitual criminal conviction should be reversed on the basis that his prior AUUW conviction could not serve as a predicate offense, we note that, in the event that this court finds that the defendant had no constructive possession over the assault rifle and ammunition, the armed habitual criminal conviction would also be defeated on this additional basis.

¶ 26    A person commits the offense of armed habitual criminal if he possesses a firearm after having been convicted of two or more predicate offenses.  See 720 ILCS 5/24-1.7 (West 2012). A person commits the offense of UUWF if he possesses a firearm or firearm ammunition after having been convicted of a prior felony.  See 720 ILCS 5/24-1.1(a) (West 2012).

¶ 27    "Knowing possession" can be either actual or constructive.  *People v. Brown*, 327 Ill. App. 3d 816, 824 (2002).  Because the defendant was not found in actual possession of the assault rifle, the State had to prove that he constructively possessed it.  See *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003).  To establish constructive possession, the State must prove that the defendant: (1) had knowledge of the presence of the weapon; and (2) exercised immediate and exclusive control over the area where the weapon was found.  *Id.*  "Evidence of constructive possession is often entirely circumstantial."    (Internal quotation marks omitted.)    *Id.* "Knowledge may be proven by evidence of a defendant's acts, declarations or conduct from which it can be inferred he knew the contraband existed in the place where it was found." *People v. Ross*, 407 Ill. App. 3d 931, 936 (2011).  "Control is established when a person has the 'intent and capability to maintain control and dominion' over an item, even if he lacks personal present dominion over it."  *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17 (quoting *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992)).  Control over the area where the contraband was found gives rise to an inference that the defendant possessed the contraband.  See *McCarter*, 339 Ill. App. 3d at 879.  "Knowledge and possession are questions of fact to be resolved by the trier of fact, whose findings should not be disturbed upon review unless the evidence is so unbelievable, improbable, or palpably contrary to the verdict that it creates a reasonable doubt of guilt." *People v. Luckett*, 273 Ill. App. 3d 1023, 1033 (1995).

¶ 28    Viewing the evidence in a light most favorable to the State, we find that the State proved beyond a reasonable doubt that the defendant had constructive possession over the assault rifle and ammunition.  The evidence shows that on July 14, 2012, in conducting a parole compliance check on the defendant, Officer Tweedle found an assault rifle and ammunition in the attic of the defendant's home at 5210 South Morgan Street in Chicago.  The first-floor unit, where the defendant lived, had stairs leading to the attic from the enclosed back porch.  The enclosed back porch was accessible from the rear of the kitchen.  Neither the entry leading to the enclosed back porch nor the attic had a door.  According to Officer Tweedle, the assault rifle was loaded and found along with a box of .223-caliber bullets nearby.  Both Officers Tweedle and Pozulp testified that nothing obscured their view of the assault rifle, which was located near the entrance of the attic.  At the time of the parole compliance check, the defendant was alone in the first-floor unit.  The defendant's great-aunt, Patricia, testified that the defendant was the only person living in the first-floor unit at the time of his arrest in the case at bar, and that Patricia lived in the basement unit of the residence.  Evidence was also presented to the trial court that when asked about the assault rifle during police interrogation, the defendant remarked that, "the hood's crazy, we're at war with these GDs out here" and that "I'm not worried about that, and my lawyer will handle this."  On cross-examination, Officer Pozulp, when asked to clarify whether the defendant had informed the police during interrogation to "go ahead and charge me with that gun," Officer Pozulp confirmed that he had.

¶ 29    Given this evidence, we find that the trier of fact could reasonably have concluded that the defendant had knowledge of the presence of the weapon, and maintained control over the area where the contraband was found. When questioned about the recovered assault rifle during police interrogation, the defendant neither registered surprise as to its existence nor made any

attempt to deny his ownership of the weapon. Instead, he responded to police inquiry by making statements which were tantamount to an explanation as to his need for it—for protection. His statements, coupled with corroborating evidence of the weapon's condition at the time it was found by the police (loaded with one round in the chamber, 41 live rounds in a banana magazine, along with an additional 43 rounds of ammunition in a nearby box), gave rise to a reasonable inference that the defendant had knowledge of the presence of the assault rifle and ammunition. The defendant now argues that his postarrest statements to the police were ambiguous at best and that, "[i]n the absence of any other evidence corroborating [his] constructive possession," they were not sufficient to support his convictions beyond a reasonable doubt. He specifically points out that the State produced no physical evidence such as fingerprints linking him to the assault rifle or ammunition. We reject this contention. As noted, evidence of constructive possession is often entirely circumstantial. *McCarter*, 339 Ill. App. 3d at 879; *People v. Stack*, 244 Ill. App. 3d 393, 399 (1993) (defendant's knowledge of the existence of a firearm within his possession may be inferred from circumstantial evidence). Thus, in viewing the evidence in a light most favorable to the State, we find that the trial court could reasonably have construed the defendant's statements to the police as a tacit confirmation of his knowledge that the weapon was located in the attic. See *Ross*, 407 Ill. App. 3d at 936 ("[k]knowledge may be proven by evidence of a defendant's acts, declarations or conduct from which it can be inferred he knew the contraband existed in the place where it was found"); see generally *People v. Brown*, 327 Ill. App. 3d 816 (2002) (affirming defendant's conviction for UUWF based on constructive possession, where the circumstantial evidence was corroborated by defendant's statement to the police about the weapon).

¶ 30    We further find that the evidence presented at trial was sufficient to establish that the defendant exercised immediate and exclusive control over the attic where the assault rifle and ammunition were found. Evidence presented at trial showed that the defendant lived alone in the first-floor unit of the residence at the time of his arrest. The trial court also heard evidence that the attic, where the assault rifle and ammunition were recovered, was directly accessible from the defendant's first-floor unit. At trial, Officer Tweedle testified that the kitchen in the first-floor unit led to an enclosed back porch, where a flight of stairs led directly to the attic. Testimonial evidence at trial established that neither the entry leading from the first-floor unit to the enclosed back porch, nor the entrance of the attic, had a door or any obstacles barring access. Although the defendant's great-aunt, Patricia, testified that both she and the defendant had physical access to the attic, she stated that she was not aware of the presence of the assault rifle and the ammunition in the attic. The trial court, as the trier of fact, also noted for the record that Patricia "had a tremendous amount of difficulty walking in and out of the court"; that she was "aided by a cart that is on wheels that also has a seat which she sat in when she testified"; and that she "did not take the two or three steps up to the witness stand." Viewing the evidence in a light most favorable to the State, we find that the trial court could reasonably have concluded that the defendant exercised exclusive control over the attic where the contraband was found, where it could reasonably be inferred from the record that the defendant was the only able-bodied person living at 5210 South Morgan Street who could have climbed the attic stairs and accessed the attic space in order to place the weapon there.

¶ 31    Nonetheless, the defendant makes a number of arguments claiming that he had no exclusive control over the attic because others also could have accessed the attic. He points to Patricia's testimony that Loretta and Willie each had a key to the residence; that before the

defendant moved into the first-floor unit in April 2012, other family members had brought furniture and items into the apartment and had also "tried to clear some things out to make the space better for him"; that some items in the attic were there before the defendant moved into the residence; and that there was mail that was addressed to different family members at the 5210 South Morgan Street location. We reject this contention. Here, the trial court heard Patricia's testimony that Loretta's key was defective and that Loretta no longer possessed it. Although evidence was presented at trial that both Patricia and the defendant had access to the attic, it could not reasonably be concluded that Patricia could have climbed the stairs to the attic on her own, as noted by the trial court's findings that she was physically limited. No evidence was presented to the trial court that Willie, as an owner of the residence, accessed the attic at any point before or during the defendant's stay in the first-floor unit. Nor was any evidence presented to show that different family members, to whom mail was addressed at that location, physically came to the residence to pick up their mail. Indeed, the trial court found that the fact that there was mail addressed to different family members at the 5210 South Morgan Street location, in no way indicated that "they were coming into this house to get their mail and were going up into the [d]efendant's apartment and up into that attic." While Patricia testified that other family members brought furniture and items into the first-floor unit in preparation for the defendant's arrival in April 2012, and the attic contained items before the defendant moved in, the trial court was not required to speculate whether the assault rifle and ammunition were among those items placed in the attic by someone else. See *Siguenza-Brito*, 235 Ill. 2d at 219 (the trier of fact was not required to accept any possible explanation compatible with the defendant's innocence and elevate it to the status of reasonable doubt). Moreover, it was within the province of the trial court, as the trier of fact, to assess Patricia's credibility and determine

what weight to give to her testimony. See *Graham*, 392 Ill. App. 3d at 1009 (it is within the province of the trier of fact "to assess the credibility of the witnesses, determine the appropriate weight of the testimony, and resolve conflicts or inconsistencies in the evidence"). Thus, viewing the evidence in the light most favorable to the State, we find that the evidence established that the defendant exercised immediate and exclusive control over the attic where the weapon and ammunition were recovered. Therefore, the State proved beyond a reasonable that the defendant had constructive possession of the assault rifle and ammunition that were recovered from the attic by the police. Accordingly, the defendant's UUWF conviction must stand.

¶ 32    For the foregoing reasons, we affirm in part and reverse in part the judgment of the circuit court of Cook County, and remand this matter to the circuit court for resentencing in light of the reversal of the defendant's armed habitual criminal conviction.

¶ 33    Affirmed in part; reversed in part; remanded.