2020 IL App (2d) 151282-U
No. 2-15-1282
Order filed March 25, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14-CF-2268 |
| DONALD CHAMBERLAIN, | ) ) ) | Honorable Brian F. Telander, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Justices Hutchinson and Zenoff concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The State proved defendant guilty beyond a reasonable doubt of burglary, specifically that he had the requisite intent when he entered the store where he committed a theft: the trial court could infer such intent from the evidence that he entered the store, hid behind his girlfriend as he removed a watch from its package and placed it in his pocket, exited the store about a minute later, and admitted to the police that he was "planning" to steal gifts from the store.

¶ 2   Following a bench trial, defendant, Donald Chamberlain, was convicted of retail theft (720 ILCS 5/16-25(a)(1) (West 2014)) and burglary (*id*. § 19-1(a)), and he was sentenced to concurrent terms totaling six years' imprisonment.  On appeal, he argues that the State failed to prove him guilty of burglary beyond a reasonable doubt.  We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The count charging defendant with burglary provided that "defendant, without authority, knowingly entered a building, Kohl's, *** with the intent to commit a theft therein."

¶ 5     Evidence presented at trial revealed that defendant and his wife, Lisa Gillespie, were in the Kohl's store at around 3 p.m. on Christmas Eve in 2014.  Kohl's was "really busy."  David Stanton, who worked at that Kohl's in loss prevention, was monitoring the salesfloor via surveillance cameras.  While doing so, he saw defendant in the jewelry department.

¶ 6     Video submitted at trial revealed that defendant was walking quickly through various displays in the jewelry department.  At one point, defendant walked past a display of watches.  He grabbed one of the watches without looking at any similar merchandise and continued walking until he reached the adjacent accessories department.  In that department was Gillespie.  Without interacting with Gillespie, defendant stood between two short and narrow walls from which scarves were hung.  Gillespie backed up so that her back was to defendant while he stood between the two displays.  Defendant moved around while watching his surroundings and looking over Gillespie's shoulder.  According to Stanton, defendant removed the watch from the packaging, put the watch in his pocket, and placed the empty packaging in a cart.  Video showed that defendant then left the department and walked out of Kohl's a little over one minute later.

¶ 7     When the police arrived, defendant was searched.  No cash or credit or debit cards were found on him.  Defendant was handcuffed and placed in the back of Officer Robert Fortino's squad car.  During the drive to the police station, defendant told Fortino that he "was trying to get a Christmas gift, man."   Officers at the scene learned that defendant also had taken several other pieces of jewelry and a T-shirt.

¶ 8 At the police station, defendant was advised of his rights. He admitted taking the watch and told Fortino that he was "planning on stealing those gifts." Defendant's written statement, which was prepared "much" later, did not contain this statement.

¶ 9 While in custody, defendant phoned Gillespie, and that conversation was recorded. Defendant, who was talking quickly, told Gillespie that his attorney would contact her soon. He told her that "you had money in your pocket, you know what I'm saying." She responded, "Oh, okay, so *I* had money?" (Emphasis in original.) When defendant advised Gillespie that he had to end the call, she interjected, "I need to know what happened, so, what—"

¶ 10 Gillespie, who never spoke to the police, testified that her employer had paid her the morning that she and defendant went to Kohl's to buy Christmas gifts. She claimed to be "prepared, if necessary, to pay for any purchases that [she] or [defendant] might make that afternoon." Gillespie did not buy anything at Kohl's.

¶ 11 The trial court found defendant guilty of burglary, noting specifically that defendant had the intent to commit a theft before he entered Kohl's. Supporting that position, the court found that defendant's conduct in the store "[was] not the actions of a shopper." Rather, defendant acted like "a person who ha[d] gone [to Kohl's] to take as much property as he c[ould] and get out." The court noted that defendant was "constantly moving from one area to the other;" "doing things with his hands that you can't see;" "going behind different things, probably knowing that there is a video or that someone is watching him;" and "using his wife as a shield." The court also found Gillespie not credible and Fortino credible, mentioning specifically that Fortino testified that defendant confessed to having a plan to steal things from Kohl's.

¶ 12 Defendant filed a motion for a new trial, arguing that he was not proved guilty of burglary beyond a reasonable doubt. The court denied the motion, reiterating again that "it looked like

[defendant] wasn't there shopping." Rather, "[i]t looked like he had a deliberate plan, when he walked directly up to that display and immediately grabbed" the watch.

¶ 13    This timely appeal followed.

¶ 14                                II. ANALYSIS

¶ 15    At issue in this appeal is whether defendant was proved guilty of burglary beyond a reasonable doubt.[1]    When the sufficiency of the evidence is challenged on appeal, we must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48.  In assessing the sufficiency of the evidence, it is not our function to retry the defendant or to substitute our judgment for that of the trier of fact.  *People v. Sanchez*, 2013 IL App (2d) 120445, ¶ 18.  Rather, it is within the province of the trier of fact "to assess the credibility of the witnesses, determine the appropriate weight of the testimony, and resolve conflicts or inconsistencies in the evidence."  *People v. Graham*, 392 Ill. App. 3d 1001, 1009 (2009).  We will reverse a defendant's conviction only if "the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to the defendant's guilt."  *Id.*

¶ 16    As relevant here, section 19-1(a) of the Criminal Code of 2012 (720 ILCS 5/19-1(a) (West 2014)) provides that "[a] person commits burglary when without authority he or she knowingly enters [premises] *** with intent to commit therein a felony or theft."  A person may commit a burglary by entering a building that is open to the public if the entry is inconsistent with the purpose

_____

[1] Defendant also argued in his brief that the limited-authority doctrine does not apply in cases involving retail theft.  Defendant has withdrawn this argument in light of *People v. Johnson*, 2019 IL 123318.

for which the building is open. *People v. Durham*, 252 Ill. App. 3d 88, 91 (1993); *People v. Boose*, 139 Ill. App. 3d 471, 473 (1985). For example, entering a store with the intent to commit a theft is outside the scope of the purposes for which authority to enter a store is granted. See *People v. Rudd*, 2012 IL App (5th) 100528, ¶ 13; *Boose*, 139 Ill. App. 3d at 473.

¶ 17    Defendant claims that the State failed to prove beyond a reasonable doubt that he had the intent to commit a theft when he entered Kohl's. Intent may be proved by circumstantial evidence and inferences drawn therefrom. *Rudd*, 2012 IL App (5th) 100528, ¶ 14. "Circumstantial evidence is 'proof of facts and circumstances from which the trier of fact may infer other connected facts which reasonably and usually follow according to common experience.' " *People v. McPeak*, 399 Ill. App. 3d 799, 801 (2010) (quoting *People v. Stokes*, 95 Ill. App. 3d 62, 68 (1981)). In a burglary prosecution, the relevant surrounding circumstances include, but are not limited to, the time, place, and manner of entry into the premises; the defendant's activity within the premises; and any alternative explanations offered for the defendant's presence. See *People v. Richardson*, 104 Ill. 2d 8, 13 (1984).

¶ 18    An inference of intent does not require the trier of fact to look at all possible explanations consistent with the defendant's innocence or to be satisfied that each link in the chain of circumstances was proved beyond a reasonable doubt. See *People v. Smith*, 2014 IL App (1st) 123094, ¶ 13. Rather, a defendant's intent is proved beyond a reasonable doubt based on all the evidence, when considered as a whole. See *id.*

¶ 19    Viewing the circumstantial evidence in the State's favor, as we must, we determine that a rational trier of fact could have found that defendant entered the store with the intent to commit a theft. As the trial court observed, defendant's actions in the store were quick and deliberate. After taking the watch from the display area, he met up with Gillespie in an adjacent department. Then,

without interacting with Gillespie, he stood in an area concealed from the security cameras while Gillespie blocked shoppers from viewing defendant or accessing the area where defendant stood. Defendant left the store after removing a watch from its packaging and leaving the packaging behind. Once in custody, defendant confessed to having a "plan[]" to steal items from Kohl's.

¶ 20    Relying on *People v. O'Banion*, 253 Ill. App. 3d 427 (1993), defendant argues that, to prove him guilty of burglary beyond a reasonable doubt, the State needed to establish when defendant entered Kohl's, the circumstances of his entry, and what transpired between his entrance and the commission of the theft. We disagree. Although *O'Banion* noted that such facts might have established beyond a reasonable doubt the defendant's entry with the intent to commit a theft, the court in no way suggested that evidence supporting these facts is required before a defendant can be found guilty. *Id.* at 429. Rather, the court merely observed, after noting the absence of such facts, that "there [was] no evidence from which the defendant's intent at the time of entry could be reasonably inferred." *Id.* As noted above, the court here was presented with evidence of defendant's confession and phone conversations. From these facts and his observed conduct, which were not present in *O'Banion*, the court could reasonably infer that defendant possessed the intent to commit a theft when he entered Kohl's. Because of these additional facts here, defendant's reliance on *O'Banion* is misplaced.

¶ 21    In arguing that his intent to commit a theft before entering Kohl's was not established, defendant emphasizes that (1) he was in Kohl's for several minutes before taking the watch; (2) Gillespie's testimony was unimpeached and revealed that she had money to pay for any purchases defendant wanted to make; and (3) defendant's alleged confession to having a "plan[]" to commit a theft was not corroborated in any way. We disagree with defendant. First, defendant's presence in the store for several minutes before he took the watch does not establish that his intent

to commit a theft was not established before he entered Kohl's. Not only was the store crowded, thus hindering defendant from moving about, but his theft of the other jewelry and the T-shirt certainly accounted for his presence in the store for a longer time. Second, Gillespie's testimony was impeached. When defendant phoned her, he told her that she needed to tell his attorney that she had money that day. Gillespie replied, "Oh, okay, so *I* had money?" (Emphasis in original). This strongly suggested that that was not the truth. Third, although Fortino did not know the exact words defendant used when making his incriminating statement, and defendant's written statement did not contain the statement, it was corroborated by, among other things, his actions in the store and phone conversation with Gillespie. See, *e.g.*, *People v. Freeman*, 25 Ill. 2d 88, 92-93 (1962). Considering the evidence presented, the court found Fortino's testimony credible. See *id*. at 92. There is nothing in the record indicating that that assessment was improbable or unsatisfactory. See *id*.

¶ 22                           III. CONCLUSION

¶ 23    For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 24    Affirmed.